**UNITED STATES of America**

v.

**MISCELLANEOUS JEWELRY, etc.**

Civ. Nos. N–86–2067, N–86–2068,
N–86–2069 and N–86–2071.

United States District Court,
D. Maryland.

Aug. 5, 1987.

Brad Cates, U.S. Dept. of Justice, James S. Cohen, Sp. Asst. U.S. Atty. for the District of Columbia; and Larry D. Adams, Asst. U.S. Atty. for the D. Md., for U.S.

Mitchell Myers, and Dacy, Myers and Suissa, Silver Spring, Md.; and David B. Smith, and English & Smith, Alexandria, Va., for defendant properties.

## MEMORANDUM

NORTHROP, Senior District Judge.

This action is a forfeiture proceeding brought pursuant to the Drug Abuse Prevention Act, 21 U.S.C. § 801 *et seq.*, in which the plaintiff ("the Government") is seeking to have the defendant property, which includes over a million dollars in cash, two large checks, two pieces of real estate and miscellaneous jewelry and electronic equipment,[1] forfeited on the theory that the property was furnished or intended to be furnished in exchange for a controlled substance or property constituting proceeds traceable to such an exchange. *See* 21 U.S.C. § 881(a)(6). The claimant is Alvin M. Walker, personal representative of the estate of Dennis Constantine White and guardian of Mr. White's alleged minor heirs. Jurisdiction exists pursuant to 28 U.S.C. § 1345 and § 1355.

Presently pending before this Court is the Government's motion to strike answer and claim filed by claimant, the Government's motion for summary judgment and claimant's cross-motion for summary judgment. A hearing was held on these motions.[2]

---

**1.** Specifically, the properties seized consists of the following: approximately $1,002,219.48 in United States currency; $7,086 in United States currency represented by a personal check drawn on First American Bank of Maryland; $30,000 in United States currency represented by a cashier's check drawn on Perpetual American Bank; real estate located at 5319 Old Branch Avenue, Temple Hills, Maryland and 12603 Monterey Circle, Fort Washington, Maryland; 42 pieces of jewelry and 30 pieces of electronic equipment.

**2.** During the hearing claimant requested a second extension of time in which to conduct discovery relying on Fed.R.Civ.P. 56(f). This request was also made informally in claimant's April 21, 1987, reply memorandum. The Court denied the motion in open court for the following reasons: (1) the request was untimely in that it was initially made only two days prior to the discovery cut-off date; and (2) the claimant failed to comply with Rule 56.

A party opposing summary judgment is required to provide "specific facts" showing that there is a genuine issue of material fact for trial or explain why he cannot immediately do so. Fed.R.Civ.P. 56(e) and (f). A Rule 56(f) request must demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1363 (9th Cir.1986), quoting from *Securities & Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980) (citations omitted), *cert. denied,* 449

## I. FACTS

The undisputed facts in this case are rather simple.[3] On May 5, 1986, Dennis Constantine White ("White") was found dead along with his daughter, Donna Ann Marie White, in his residence at 5319 Old Branch Avenue Avenue, Temple Hills, Maryland, by officers of the Prince George's County Police Department ("PGCPD"). It is believed that White and his daughter were murdered. During the homicide investigation, the officers discovered the defendant cash, checks, jewelry and electronic equipment in the residence. Since March 1985, Prince George's County law enforcement officers suspected White of large-scale distribution of cocaine. According to the investigation by these law enforcement officers, between March 1985, or earlier, and May 5, 1986, White obtained uncut cocaine from New York City, which he distributed as "Jamaican Rock" in the Temple Hills area.

Records of the United States Immigration and Naturalization Service ("INS") reflect that White lawfully entered the United States on or about August 3, 1982, at which time he declared a small amount of cash and one automobile.[4] Other than proceeds obtained from the joint operation of a

---

U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). "The non-movant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts...." *Id.*

Claimant asserted that he wished further discovery in order to: (1) obtain the names of informants used by the Prince George's County Police during the investigation of Dennis White's alleged drug trafficking activity; (2) depose Corporal Michael Murphy, one of the Prince George's County police officers who took part in the investigation of Dennis White; and (3) obtain an affidavit from Iris Moncriffe, the alleged mother of Dennis White's alleged heirs, who, according to claimant will state that Dennis White had a profitable vending business in Jamaica prior to his coming to the United States, which might account for at least part of the money or assets seized by the Government and subject to this forfeiture proceeding.

This action was filed by the Government on June 26, 1986. Claimant has had more than sufficient time to investigate his case and to obtain the information now being sought. Indeed, the Court previously granted claimant an extension of the discovery deadline. Moreover, with regard to the request to obtain the names of informants (and presumably depose them) and the request to depose Officer Murphy, claimant made no attempt to show how this additional discovery will produce facts relevant to the issues raised by the pending motions. During oral argument on his request for additional discovery, claimant seemed to indirectly question the accuracy and reliability of the deposition testimony of Officer Harwood relied on in part by the Government regarding the issue of probable cause. An unspecified hope of undermining the credibility of a deponent does not suffice to avert summary judgment unless other evidence about the deponents' credibility raises a genuine issue of material fact. *See e.g., United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d at 1364. Here, claimant did not proffer or offer any evidence that additional discovery would produce or lead to the production of evidence relevant to the credibility of Officer Harwood.

Despite this Court's belief that claimant failed to meet his burden, under Rule 56(f), of showing why this Court should not at this juncture rule on the Government's pending summary judgment motion, *see e.g., Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81 (3rd Cir.1987); *Ullah v. Canion Shipping Co.,* 589 F.Supp. 552 (D.Md.1984), *affirmed,* 755 F.2d 1116 (4th Cir. 1985); *Craig v. Moore,* —— F.Supp. ——, H–86–2956, (D.Md. April 27, 1987) (published), claimant was given one week from the conclusion of the hearing to file the affidavit of Iris Moncriffe. The Court, however, did not receive the affidavit until June 11, 1987, approximately three weeks after the deadline and only after this Court informed claimant that the affidavit had not yet been filed. No explanation for the untimely filing was offered. While the Court will consider the affidavit, for these reasons, claimant's request for additional time to conduct discovery was denied.

**3.** The facts are derived from the depositions, affidavits and documentation filed in the case.

**4.** White stated in his Application for Visa and Alien Registration prepared by him in 1982, that he, at that time, had $4,300 in cash, an account with a Nova Scotia bank and a car. This application form was provided to the Court by the Government in response to claimant's untimely introduction of the affidavit of Ms. Moncrieffe, in an attempt to discredit her. Ms. Moncrieffe claims to be the mother of White's four children. However, on the application, White states that he has no children. All of the alleged heirs were born prior to 1982. The claimant was given additional discovery time to determine if White had a Nova Scotia bank account and if so, the balance of the account. At the expiration of the discovery time period, claimant's counsel filed an affidavit with this Court stating that representatives of the Bank of Nova Scotia in Kingston and Portland, Jamaica had no records of White having an account at either of these branches.

small grocery store in Washington, D.C. from March 1986 to May 5, 1986, and possible sporadic earnings as a self-employed vendor of merchandise operating out of a vehicle, investigation by the Federal Bureau of Investigation ("FBI") does not reveal any source of legitimate income for White since his initial entry into the United States.

On June 26, 1986, warrants of arrest *in rem* were issued and the defendant properties were seized during the month of July 1986. This Court then issued, on August 21, 1986, a Show Cause Order why the forfeiture should not be ordered.

After a series of notices were sent to interested parties and published in several newspapers, Alvin B. Walker, claimant, filed a claim and answer regarding the defendant properties on October 21, 1986. Thereafter, the Government filed a motion to strike answer and claim of Mr. Walker asserting that claimant lacks standing to defend this action because he has no ownership interest in the defendant properties. The Government has also filed a motion for summary judgment on the grounds that, based on the undisputed facts, there is probable cause[5] to believe that the properties were exchanged for or intended to be exchanged for illegal controlled substances or proceeds traceable to such exchanges and therefore forfeiture is appropriate, 21 U.S.C. § 881(a)(6).

The claimant has filed oppositions to the Government's motions and has filed a cross-motion for summary judgment asserting that the Government has failed to meet its probable cause burden, that the forfeiture should abate as a result of White's death and that the allocation of the burden of proof under 19 U.S.C. § 1615 is unconstitutional in the circumstances of this case. Claimant also asserts that White's alleged heirs are innocent owners whose interest in the property is exempt from forfeiture under 21 U.S.C. § 881(a)(6).

The Court will now address each of these motions and the issues raised therein.

## II. MOTION TO STRIKE: THE STANDING ISSUE

Section 2461(b) of Title 28, United States Code, provides in pertinent part that "whenever a forfeiture of property is prescribed as a penalty for violation of an Act of Congress ... in case of seizure on land, the forfeiture may be enforced by a proceeding by libel which shall conform as near as may be to proceedings in admiralty." Rule A, Supplemental Rules of Certain Admiralty and Maritime Claims, Fed. R.Civ.P., states that these rules "apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to ... (2) actions *in rem....*" Rule A further states that the "general Rules of Civil Procedure ... are also applicable to [actions *in rem*] except to the extent that they are inconsistent with these Supplemental Rules."

Pursuant to Supplemental Rule C(6), a claimant of property that is the subject of an action *in rem* shall file his claim within ten (10) days after process has been executed and shall file an answer within twenty (20) days of filing a claim. The claim must consist of a verified statement which states the interest of the claimant giving rise to the demand for return of the property. If the claim is made by one other than the possessor of the claimed interest, it should specify the basis of the authority upon which the claimant is acting and state that the claimant is duly authorized to make the claim. 7A Moore's, *Federal Practice* ¶ C.16 at 700.16 (1983); *United States v. Fourteen (14) Handguns,* 524 F.Supp. 395 (S.D.Tex.1981).

This procedure is to demonstrate that a claimant has standing to seek return of the property. *United States v. Properties Described in Complaints,* 612 F.Supp. 465, 467 (N.D.Ga.1984), *affirmed,* 779 F.2d 58 (11th Cir.1985). It is well established that

---

5. Although not raised by either party, it appears that the probable cause burden of proof should be applied to the summary judgment motions. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (applying clear and convincing tests to summary judgment) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture. *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d at 1373; *U.S. v. One 1978 Piper Navajo PA-31 Aircraft*, 748 F.2d 316, 319 (5th Cir.1984); *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency*, 661 F.2d 319, 326 (5th Cir.1981) (citing numerous supporting cases). Congress directed that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Joint Explanatory Statement of Title II and III, P.L. 95–633, 95th Cong. 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin. News 9496, 9518, 9522.

In the instant case, the Government argues that no claim, as contemplated and required by Supplemental Rule C(6), was filed by the claimant. In his claim, Mr. Walker states that he is the "Personal Representative of the Estate of Dennis White, appointed on August 4, 1986, by the Orphans' Court of Prince George's County, Maryland," and "makes claim to the Defendant properties on behalf of the deceased's heirs.[6] The Government contends that, because Mr. Walker does not state that he personally has an ownership interest in the defendant properties, and is merely the person responsible for administering and distributing the assets contained in the White's estate, he has no standing to file a claim and answer. The Government goes on to state, that under the "relation back doctrine," as codified by Congress in 1984 "all right, title and interest in the property described in subsection (1) of this section shall vest in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 881(h). Thus, the Government asserts, the United States became the absolute owner of the defendant properties as of the date they were unlawfully purchased or acquired by White prior to his death. Therefore, these properties would not be assets of the estate and are not available for distribution by Mr. Walker. Furthermore, the Government claims, because Mr. Walker is unable to rebut, by a preponderance of the evidence, the Government's showing of probable cause to believe that White purchased or acquired the defendant properties with the proceeds of his alleged cocaine distribution activities, Mr. Walker's role as personal representative of White's estate does not entitle him to defend against the forfeiture of White's assets.

 It appears from the claim, the subsequent pleadings, and from the deposition transcript of Mr. Walker that he is actually proceeding in this action in two roles. First, claimant is acting as the personal representative of White's estate. *See* MD. Estates and Trusts CODE ANN. § 6–101 *et seq.* (1974, 1986 cum. suppl.) As such, claimant has the authority to "maintain an action to recover possession of property or to determine title to it." *Id.* at § 7–102; *DeFelice v. Riggs National Bank*, 55 Md. App. 476, 479, 462 A.2d 88 (1983). It is without question that, if White were alive, he would have standing to defend against the forfeiture of his properties on whatever grounds are relevant, including the issue of whether the Government has probable cause to seize and seek the forfeiture of the defendant properties. *U.S. v. One 1945 Douglas C-54 (DC-4) Aircraft, Serial No. 22186*, 604 F.2d 27, 28 (8th Cir.1979) ("It is the owner or owners of the *res* who have standing to challenge a forfeiture."); *United States v. One 1971 Lincoln Continental*, 460 F.2d 273, 274 (8th Cir.1972); *Gen. Finance Corp. of Fla. South v. United States*, 333 F.2d 681 (5th Cir.1964). The relation-back doctrine, while aptly articulated by the Government, is not triggered until *after* the Court determines that the Government is entitled to have the defendant properties forfeited. Thus, if White were alive, the relation-back doctrine would not undermine his standing to defend against the forfeiture.

Since White is dead, his personal representative is the appropriate and indeed logi-

6. The claim also states that Mr. Walker is autho- rized to make a claim on behalf of White's heirs.

cal person to assert a claim on behalf of White's estate. It is hornbook law that a personal representative may commence or pursue any personal action at law or equity which the decedent might have brought which will inure to the benefit of the estate. *Behnke v. Geib*, 169 F.Supp. 647 (D.Md.1959); *Smith v. Potomac Edison Co.*, 165 F.Supp. 681 (D.Md.1958); *Turk v. Grossman*, 176 Md. 644, 6 A.2d 639 (1939); *see also U.S. v. $129,374.00 in U.S. Currency*, 769 F.2d 583 (9th Cir.1985) (conservator's claim is derivative of any claim or defense of the individual whose estate he represents). Accordingly, claimant, as personal representative of White's estate, has standing to assert claims derived from White regarding the defendant properties.

In his second role Mr. Walker has asserted a claim, as guardian of the property, on behalf of the alleged minor heirs of White.[7] *See* MD. Estates and Trusts CODE ANN. §§ 13–201—13–222 (1974, 1986 cum. suppl.). In this capacity, claimant is vested with title to all property of the minor heirs held by the estate at the time claimant was appointed guardian or acquired later. *Id.* at § 13–206. The claimant argues that the alleged heirs of Dennis White are innocent owners whose interest in the *res* is exempt from forfeiture under 21 U.S.C. § 881(a)(6).

Here again, the Government asks this Court to apply the relation-back doctrine in section 881(h) at this juncture and hold that title to the properties vested in the Government at the time White acquired the prop-erties through his alleged drug activities and therefore at the time of his death, the defendant properties were not a part of his estate which could pass to his alleged heirs. While this argument ultimately has a great deal of merit, as presented, it requires the Court to deny the alleged heirs standing before the Court has made a determination of whether the Government has made out an unrebutted showing of probable cause to support forfeiture. *United States v. 5,644,540.00 in U.S. Currency*, 799 F.2d at 1362; *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983) ("If unrebutted, a showing of probable cause alone will support a forfeiture."). This is the proverbial "putting the cart before the horse." Thus, the Court will hold the standing issue regarding the alleged heirs *sub curia* until after a review of the cross-motions for summary judgment.

## III. CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. *Probable Cause*

 The Government has moved for summary judgment on the ground that it has probable cause to seize and forfeit the defendant properties pursuant to 21 U.S.C. § 881(a)(6).[8] By virtue of 21 U.S.C. § 881(d),[9] the burden of proof in this action is controlled by 19 U.S.C. § 1615.[10] Under section 1615, the Government must initially demonstrate probable cause to believe that

---

7. For the purpose of disposing the pending motions only, the Government has agreed not to contest whether the alleged heirs are actually the children of White.

8. Section 881(a)(6) provides in part:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them: ... (6) all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter....

9. Section 881(d) provides:
The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

10. Section 1615 provides:
In all suits or actions (other than those arising under Section 1592 of this title) brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties or imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged by the court....

a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *Boas v. Smith,* 786 F.2d 605, 609 (4th Cir.1986); *United States v. Kemp,* 690 F.2d 397, 401 (4th Cir.1982); *United States v. A Single Family Residence,* 803 F.2d 625, 628 (11th Cir.1986); *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357; *United States v. $33,000 United States Currency,* 640 F.Supp. 898, 899 (D.Md.1986) (government must establish a nexus between the property to be forfeited and the criminal activity defined in the statute); *United States v. Taylor,* 640 F.Supp. 35 (E.D.Va.), *affirmed,* 796 F.2d 475 (4th Cir.1986). Probable cause is defined as reasonable grounds for belief of guilt, supported by less than *prima facie* proof, but more than mere suspicion. *United States v. A Single Family Residence,* 803 F.2d at 628; *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d at 1362; *United States v. $33,000.00 United States Currency,* 640 F.Supp. at 899. "The existence of probable cause is judged 'not with clinical detachment but with a common sense view to the realities of normal life.'" *United States v. A Single Family Residence,* 803 F.2d at 628 (quoting *United States v. $4,255,625.39,* 762 F.2d 895, 904 (11th Cir.1985)). The Government's showing of probable cause and the resulting civil forfeiture may be based on otherwise inadmissible hearsay. *United States v. A Single Family Residence; United States v. One 56–Foot Motor Yacht Named The Tahuna,* 702 F.2d 1276 (9th Cir.1983).

■ In the instant case, the Government demonstrated probable cause to believe that White purchased or acquired the defendant properties as a result of his large-scale distribution of cocaine. According to the affidavit of Special Agent Rodney C. Andress, Jr., Baltimore Division FBI Agent, it was learned through reliable confidential sources that, beginning in April 1985, White began selling uncut cocaine from apartment numbers 10, 18 and 24 in the 3100 block of Southern Avenue, Temple Hills, Maryland. The cocaine sold by White was known as "Jamaican Rock" and was brought in from New York City. An undercover Prince George's County police officer went to apartment 24 and purchased cocaine from an unknown male. The undercover police officer then went to apartment 18 and bought cocaine from Harold Bean, a man who said he worked for the "big man" who operated out of apartment 24 and sold "Jamaican Rock."

The PGCPD executed search warrants for apartments 10, 18 and 24, resulting in the seizure of 136 fifty dollar packets of cocaine (approximately one-half gram each) and $1,312 in cash. Apartment 24 appeared to be a "stash" house used for distribution of cocaine, since very little clothing and furniture were found in the apartment. Apartment 24 was found by PGCPD to be leased by White.

During the execution of the search warrants, Gregory Halston fired on a police officer and was arrested. During an interview of Halston by the PGCPD on May 9, 1986, Halston stated that he sold cocaine known as "Jamaican Rock" for White from both apartment 10 and 24. He also confirmed that apartment 24 was a "stash" house and distribution center for cocaine. During the last week of May 1985, a confidential source made a controlled purchase of cocaine from White in an apartment in 3011 Southern Avenue and reported that White picked up his cocaine from New York and was the main distributor of cocaine in the Southern Avenue area. This information was corroborated by additional confidential sources.

Six separate confidential sources of the PGCPD, who were unknown to each other, advised police that White would have individuals transport cocaine from New York City to the Washington, D.C. area. The sources reported that White distributed between three and four kilograms of cocaine per week and used approximately ten "runners" who distributed the cocaine for him in the Southern Avenue area and delivered up to $40,000 to White per week in proceeds from cocaine sales.

During December 1985, Yolanda Brown was arrested by PGCPD for distributing cocaine and during interviews told police

that she worked for White as his "bookkeeper" and also bonded White's "runners" if they were arrested. Her records revealed narcotics transactions between known narcotics distributors in White's organization. She also stated that White recently purchased a house at an unknown location in Maryland using money he had received from cocaine sales. The FBI was later advised, in the first week of April 1986, by the Perpetual American Bank in Washington, D.C., that they converted $60,000 in small bills into cashiers checks which were issued to a real estate company for the purchase of the property located at 5319 Old Branch Avenue. On June 25, 1986, Terry Kidwell of the Title Insurance Agency, Inc., advised Special Agent Andress that her records reflected that, on October 31, 1986, White purchased the property at 5319 Old Branch Avenue for $102,000 with cashiers checks and cash.

On May 5, 1986, White and his daughter were found dead at 5319 Old Branch Avenue, the victims of an apparent homicide. During a search of the residence, in connection with the homicide investigation, Prince George's County Police officers found over a million dollars cash in small bills, cashiers and personal checks valued at $37,086.57, and miscellaneous electronic equipment and jewelry. Also found were records indicating ownership by White of properties located at 5319 Old Branch Avenue, Temple Hills and 12603 Monterey Circle, Fort Washington, Maryland.[11] On June 27, 1986, Special Agent Andress interviewed Dottie Guertin, president of County Title Agency, Inc., who told him that the check to White for $7,086.57, found in White's house drawn on the account of County Title Agency, Inc., represented a refund to White for overpayment on the purchase of the property located at 12603 Monterey Circle.

According to the affidavit of Special Agent Andrews, records of the INS reflect that White legally entered the United States from Jamaica on August 3, 1982, claiming only a small amount of money and an automobile as assets. Surveillance conducted by the PGCPD did not indicate any legitimate employment or means of income for White. In addition, the PGCPD advised Special Agent Andress that they had five separate and distinct confidential sources who could testify to the fact that White had no legitimate income and that his entire income was from the sale of cocaine.[12] Special Agent Andress also stated that FBI Identification Division records reflected a series of arrests of White, also known as David Brown and David Cortine Brown, which involved alleged possession and distribution of marijuana.

Much of this information, summarized from the affidavit of Special Agent Andress, is supported by the deposition testimony of Robert Harwood, a Prince George's County Police officer assigned to the Special Investigation Division, who was the lead investigator of White's drug activities, and deposition exhibits, including PGCPD reports on White's drug activities.

From the pleadings and evidence, this Court concludes that the Government has made the requisite showing of probable cause to support the forfeiture. *See, e.g., United States v. Brock,* 747 F.2d 761 (D.C. Cir.1984) (circumstantial evidence of drug transactions and the fact that claimant had

11. A review of the land records for Prince George's County, Maryland, by FBI Forfeiture Specialist David C. Rolecke reflects that the property located at 12603 Monterey Circle was purchased by White on April 8, 1986, for $278,000. Land records also show that the property located at 5319 Old Branch Avenue was purchased by White on October 31, 1985, for $102,000. Rolecke advised Special Agent Andress that there are no liens on these properties.

12. According to Michelle Schumotte, a/k/a Michelle White, who was interviewed by Special Agent Andress on June 19, 1986, she had at one time resided with White. She stated that, during August 1985, White purchased a building in northeast Washington, D.C. and put both of their names on the deed. This building contained a small grocery store which opened for business on March 3, 1986 (only 2 months prior to White's death), however, business was slow and the daily gross income was approximately three to four hundred dollars. Schumotte said she was not aware of White having any other employment or sources of income except that, at one time, White had a vendor's license and sold assorted merchandise from the back of a truck.

no source of legitimate income for several years is sufficient to establish probable cause in forfeiture proceeding); *United States v. $93,685.61 In U.S. Currency*, 730 F.2d 571 (9th Cir.1984), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Once probable cause is established, the burden of proof shifts to the claimant to show, by a preponderance of the evidence, that the defendant properties are not proceeds of an illegal exchange of a controlled substance. *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d at 1362; *United States v. $4,255,625.39*, 762 F.2d at 904; *United States v. $33,000 United States Currency*, 640 F.Supp. at 900; *United States v. $23,530 in U.S. Currency*, 601 F.Supp. 179, 182 (D.Md.1985). Claimant must, therefore, establish that it is more likely true than not that the defendant properties were not proceeds of drug transactions or intended to be exchanged for drugs. *United States v. $23,530 in U.S. Currency*, 601 F.Supp. at 182.

■ The pleadings, documentation, and the deposition of claimant demonstrate that the claimant, Mr. Walker, is unable to carry this burden. Claimant's deposition reveals that he has no personal knowledge concerning White's business activities, legal or illegal, his sources of income or how he acquired any of the defendant properties. Claimant also testified that he did not know of who would have such information. Relying on three documents, however, claimant maintains that White did have legitimate income from non-drug sources which account for at least part of the assets sought to be forfeited by the Government.

First, there is a set of licenses issued to White by the District of Columbia which permitted White to run a delicatessen and sell cigarettes, presumably in connection with the small grocery store he owned in Washington, D.C. (*See* Exh. 5 to Alvin Walker's deposition submitted in support of Government's motion for summary judgment.) These licenses were issued approximately four months prior to White's death. Second, there is a set of vending licenses issued to White by the District of Columbia. (*See* Exh. 6 to Alvin Walker's deposition submitted in support of Government's motion for summary judgment.) With regard to these four licenses, claimant has done nothing more than point to their existence and assert that White had income from non-drug sources. By claimant's own admission, claimant has no way of calculating the amount of profit, if any, that White may have earned through the use of these licenses. Further, common sense would dictate that it is next to impossible to amass over a million dollars in cash and checks, purchase two homes worth over three hundred thousand dollars and purchase numerous pieces of expensive jewelry and electronic equipment with income derived from four licenses, two of which expired well before White's death and two of which were only issued four months prior to his death.

Lastly, claimant submitted the affidavit of Iris Moncrieffe who lives in Jamaica and is the alleged mother of White's alleged four heirs.[13] According to Ms. Moncrieffe, White, while living in Jamaica, was an active importer and vendor of goods who would travel to other countries to purchase goods at favorable prices and bring them back to Jamaica to take advantage of the higher prices at which the goods could be sold locally. White may have made up to twenty such trips during 1979 and 1980 and each trip was capable of generating a profit equal to $20,000.00 in United States currency at the then existing rate of exchange. Without specifying the amount she believes White saved, Ms. Moncrieffe stated that White saved most of this money because he spent little on his family and kept it in various hiding places due to his mistrust of banks.

In the affidavit, Ms. Moncrieffe stated her opinion that she believes White smuggled this Jamaican money into the United States by hiding it in his belongings and exchanged it for U.S. dollars with people who agreed to be repaid in Jamaica. According to Ms. Moncrieffe, White returned

13. *See* footnote 2, *supra.*

to Jamaica sometime in March or April 1982 and remained there until August 1982, during which time he re-engaged in his importing and vending activity and earned the equivalent of $50,000 in U.S. currency, which she believes White managed to smuggle into the United States. Mr. Moncrieffe also asserts that White worked from time to time as a painter in Jamaica.

This evidence is wholly inadequate to show the defendant properties are not drug related. First, the affidavit is sworn to in Jamaica, under Jamaican rather than United States law, and the Court cannot be sure that it contains the assurances of veracity required by 28 U.S.C. § 1746. Second, the Government is not in a position to cross-examine Ms. Moncrieffe as to the assertions made in her affidavit, as the untimely affidavit was filed after discovery had ended.

Third, and most importantly, Ms. Moncrieffe fails to substantiate any of the bald and speculative allegations concerning White's income with any facts demonstrating the basis of her opinion or that she has first-hand knowledge thereof. For example, Ms. Moncrieffe provided no importing or vending licenses, travel records, business receipts or income records to substantiate her claim that White was an active importor and vendor of goods in Jamaica during 1979 and 1980. Ms. Moncrieffe estimated potential profit from the alleged vending activity without explaining how she arrived at such figures, without demonstrating any expertise in economics, and without producing any evidence that White in fact had such income. Similarly, although the affidavit avers that White was a painter "from time to time", Ms. Moncrieffe does not indicate either his gross or net income from that sporadic activity. The affidavit does not contain any admissible facts which support Ms. Moncrieffe's conclusory claim that White managed to sneak monies into the United States in 1980 and 1982. Furthermore, Ms. Moncrieffe does not show that White retained any of this alleged income or legally earned any money for the four to seven years preced-

ing the purchase or acquisition of the defendant properties.

In fact, White's own statements in the INS papers contradict Ms. Moncrieffe's statement and demonstrate that when White entered the United States on August 3, 1982, he had only a small amount of money and an automobile. Additionally, the Internal Revenue Service records submitted by the Government show that White reported no foreign or other income from tax year 1980 through May 5, 1986, the date his body was discovered by police.[14] If Ms. Moncrieffe's opinions were admissible, this would only serve to create a factual dispute. However, pursuant to Fed.R. Civ.P. 56, an affidavit must contain facts as would be admissible in evidence. Ms. Moncrieffe's unsupported beliefs and conclusions are not admissible. Fed.R.Evid. 701.

In sum, claimant has failed to prove by a preponderance of the evidence that there is no nexus between the defendant's property and White's drug activities. Therefore, he has not met his burden. *United States v. $33,000.00 United States Currency*, 640 F.Supp. at 900.

### B. *Abatement*

■ The claimant has raised the affirmative defense of abatement in his cross-motion for summary judgment. Relying on numerous opinions which interpret other statutes, claimant asserts that the abatement doctrine is applicable to the instant civil forfeiture action. The Government disagrees. Because no court has decided whether an action brought under 21 U.S.C. § 881(a)(6) should abate upon the death of the alleged drug trafficker who had acquired the defendant property, the issue presented is a novel one. While the material facts are undisputed, the Court holds that the claimant is not entitled to judgment as a matter of law with regard to the abatement issue.

The general common law rule is that actions on penal statutes do not survive the

---

**14.** According to the Government, no documentary or other evidence of the business activity or income alleged by Ms. Moncrieffe was found at White's residence by Prince George's County police officers.

death of the alleged wrongdoer. *Ex parte Schreiber*, 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884); *United States v. Dudley*, 739 F.2d 175 (4th Cir.1984); *United States v. Grannis*, 172 F.2d 507 (4th Cir. 1949). There is no dispute over the validity of this rule. The issues presented are whether section 881(a)(6) is primarily penal, and, if so, whether the common law rule applies to this specific statute. Section 881(a)(6) is a civil forfeiture statute authorizing an *in rem* action against the property. *U.S. v. Premises known as 2639 Meetinghouse*, 633 F.Supp. 979 (E.D.Pa.1986). A claimant may intervene in a civil forfeiture case to attempt to prove that the defendant property is not subject to forfeiture; however, he does so voluntarily, without compulsion, and as a claimant, not as a defendant. Because the only question presented is whether the property is derived from an illegal drug transaction, the culpability of the owner of the property, whether or not he is also the claimant, is not at issue. 8A Moore's *Federal Practice*, ¶ 32.09 at 32–165 (1987). In contrast, a criminal forfeiture is an *in personam* proceeding against a specific person within a criminal case. The government must prove the defendant guilty of the underlying offense beyond a reasonable doubt and only then may criminal forfeiture be imposed as an additional sanction. *United States v. Veon*, 538 F.Supp. 237, 242 (E.D. Cal.1982) (distinguishing factor between criminal forfeiture is that, unlike civil *in rem* forfeiture, the personal guilt of the defendant is at issue).

In enacting section 881(a)(6), Congress expressly elected to establish a civil *in rem* proceeding rather than a "criminal" sanction. *United States v. $2,500 in United States Currency*, 689 F.2d 10, 13 (2nd Cir. 1982); *2639 Meetinghouse*, 633 F.Supp. at 994. By enacting section 881(a)(6), Congress specifically sought to avoid the implications of criminal forfeiture, creating a civil procedure for the recovery of drug proceeds, separate from the additional criminal sanction of forfeiture in 21 U.S.C. § 853(a)(1).

Claimant argues that the fact that section 881(a)(6) is an *in rem* proceeding rather than an *in personam* forfeiture is a distinction without a difference for purposes of the abatement issue. In support of this position, claimant cites several cases which have stated that *in rem* forfeitures, though nominally against the defendant property, impose penalties upon persons. *See e.g., United States v. Grande*, 620 F.2d 1026, 1039 (4th Cir.1980); *United States v. Various Denominations of Currency*, 628 F.Supp. 4, 6–7 (S.D.W.Va.1984). These opinions, however, are neither controlling nor persuasive.

In *Grande*, the Fourth Circuit held that the criminal forfeiture statute, 18 U.S.C. § 1963, applicable to those convicted of racketeering, did not violate the proscription against "forfeiture of estate" found in article III, § 3, cl. 2 of the Constitution and violated neither the Fifth nor the Eighth Amendment in that the effect of the forfeiture under the statute was the functional equivalent of a forfeiture *in rem* and was not cruel and unusual in the constitutional sense. This Court cannot see how it is justified to leap from the limited holdings in the *Grande* case to the conclusion that the abatement doctrine applies to 21 U.S.C. § 881(a)(6) and no reasoned analysis is offered by the claimant to support such an extension of *Grande*.

*Various Denominations of Currency*, also relied on by the claimant, is distinguishable because the district court was asked to decide whether the term "property" as used in 18 U.S.C. § 1955, a RICO forfeiture statute, included real property as well as personal property. The court, in addition to stating in passing that there is "little significance generally in the fact that some forfeitures may be *in personam* while others may be *in rem*," also stated:

> Moreover, the Supreme Court has held that statutes enacted "to suppress a public wrong" as was the Organized Crime Control Act of 1970, [of which § 881(a)(6) is a subsequent amendment] "although they impose penalties of forfeitures, [are] not to be construed, like penal laws generally, strictly in favor of the defendant; but are to be fairly and reasonably construed so as to carry out the intention

of the legislature. *United States v. Stowell*, 133 U.S. 1, 12, 10 S.Ct. 244, 246, 33 L.Ed. 555 (1890). *See, DiGiacomo v. United States*, 346 F.Supp. [1009] at 1011 [D.Del.1972].

628 F.Supp. at 6–7.

While the claimant completely ignores this language, this Court finds it to be supportive of the position that, although *in rem* and *in personam* forfeitures *generally* are quite similar, not every protection afforded a criminal defendant in a forfeiture action against him personally should attach when the proceeding is solely against the property and hence does not involve any determination of the guilt of innocence of the owner. *See e.g., 2639 Meetinghouse*, 633 F.Supp. at 994 (section 881(a)(6)), like its predecessors, is civil and the protections afforded a criminal defendant are not required). Thus, abatement, a privilege afforded criminal defendants in some circumstances, does not automatically apply in a civil context, under the rule enunciated in *Various Demonimations of Currency*. Claimant's reliance on that opinion is misplaced.

Claimant also asserts that the labelling of a forfeiture statute as either criminal or civil is of no consequence, since the real issue is whether the statute is penal in nature. While the Court agrees that the label alone is not dispositive, it does carry some significance. For example, in *$2,500 In United States Currency* and *2639 Meetinghouse*, both courts upheld the labelling of section 881(a)(6) as a civil *in rem* proceeding because they found the statute was not *so punitive either in purpose or effect to negate* Congressional intent. *United States v. $2,500 in United States Currency*, 689 F.2d at 14; *United States v. Prem-*

*ises Known as 2639 Meetinghouse*, 633 F.Supp. at 994. In *$2,500 in United States Currency*, the court recited the factors to consider in determining whether a remedy is too punitive to accomplish through civil procedures. Those factors are:

[W]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.[15]

689 F.2d at 12–13. Finding that section 881(a)(6) was not so punitive to negate its civil label, the court held that the Comprehensive Drug Abuse Prevention and Control Act of 1970 [16] was "replete with legislative findings and unquestionably civil provisions designed to serve its broad remedial purposes." *$2,500 in United States Currency*, 689 F.2d at 13. The Second Circuit held that section 881(a) served these purposes.[17]

Section 511(a) provides for forfeiture of controlled substances, plants, raw materials used to fabricate the articles used as containers, vessels and vehicles used for transportation, and books and records, 21 U.S.C. § 881(a) (1976). The provision was clearly aimed at the instrumentalities of the drug trade with the clear intent of preventing their continued use. In 1978 Congress added the particular subparagraph, 21 U.S.C. 881(a)(6)

---

**15.** In determining whether a remedy is penal in nature, claimant relies on a three-part analysis cited in numerous Truth-in-Lending opinions. *See, e.g., James v. Home Const. Co. of Mobile*, 621 F.2d 727, 730 (5th Cir.1980); *Murphy v. Household Finance Corporation*, 560 F.2d 206 (6th Cir.1977). He ignores, however, the opinion in *$2,500 in U.S. Currency*, which set forth the factors, as quoted above, to be considered in determining this issue in the context of section 881(a)(6). This Court will rely on *$2,500 in United States Currency*, finding the Truth-in-Lending cases to be inapposite.

**16.** 70 Pub.L. No. 91–513, § 511, 84 Stat. 1236, 1276 (1970). Subsection 881(a)(6) was enacted as an amendment to the Act in 1978. Psychotropic Substance Act, § 301, Pub.L. No. 95–633, 92 Stat. 3768, 3777 (1978).

**17.** In *$2,500 United States Currency*, 689 F.2d at 13 n. 2, the Court detailed the numerous remedial purposes the Act was designed to accomplish.

(Supp. IV 1978), covering moneys and securities utilized in drug traffic, under which this forfeiture was effected. Pub.L. No. 95–633 § 301(a), 92 Stat. 3777 (1978). The addition of money to the list of plants, raw materials, vehicles, and records used in drug traffic apparently reflects an indisputable legislative finding that money in the narcotics trade finances and assists future trade at least as much as vehicles and containers and a decision that they should likewise be seized in the effort to impede such traffic. The authorization to the Attorney General to retain forfeited property for official use or sell it and use the proceeds, 21 U.S.C. § 881(e), serves the remedial purpose of equipping and financing law enforcement activities. . . .

The statute makes no attempt to tailor the amount of loss suffered by forfeiture to the degree of culpability, *a strong indication that any punitive effect is incidental.*

*$2,500 in United States Currency,* 689 F.2d at 13–14 (emphasis added). The remedial goals of section 881(a)(6) were also noted in *2639 Meetinghouse.*

The legislative history of 881(a)(6) clearly suggests that 881(a)(6) is *designed to serve broad, non-punitive purposes.* These remedial purposes include removing the incentive to engage in the drug trade by denying drug dealers the proceeds of illgotten gains, stripping the drug trade of its instrumentalities, including money, and financing government programs designed to eliminate drug trafficking.

633 F.Supp. at 994 (emphasis added).

The claimant has suggested that, even though a section 881(a)(6) forfeiture is an *in rem* proceeding and has broad remedial purposes, this Court should follow the holding in certain RICO, antitrust and Price Control Act of 1942 cases in which the courts have held that private treble damage actions abate upon the death of the defendant. *See, e.g., Summers v. FDIC,*

592 F.Supp. 1240 (W.D.Okla.1984) (private treble damage action under RICO, 18 U.S.C. § 1964(c), is penal and does not survive death of the defendant); *Rogers v. Douglas Tobacco Board of Trade,* 244 F.2d 471 (5th Cir.1957) (under the Sherman Anti-Trust Act, action for actual damages survives death of the defendant but action for treble damages does not); *Brown v. Cummins Distilleries,* 56 F.Supp. 941 (W.D.Ky. 1944) (treble damage action under 1942 Price Control Act, § 705(e), is penal in nature and, therefore, does not survive death of defendant).

Claimant, however, completely overlooks the salient and crucial distinctions between these treble damage cases and a forfeiture action under section 881(a)(6). First, in the treble damage cases, the imposition of treble damages can occur only after an individual defendant is found to be in violation of the particular federal statute at issue. Second, the money subject to a treble damage award need not be derived from any particular assets of the defendant and need not have any association with the underlying wrong.

In contrast, an *in rem* forfeiture under section 881(a)(6), as has been repeatedly stated in this opinion, requires no holding that an individual violated the law. Rather, the only issue in this case is whether the properties were obtained through drug transactions, regardless of whether White was guilty or innocent of engaging in those drug transactions.[18]

Additionally, unlike the fungible money recoverable in a treble damage suit, the only assets recoverable under section 881(a)(6) are those derived from illegal drug transactions. The assets are tainted and are, in essence, contraband one-step removed. *2639 Meetinghouse,* 633 F.Supp. at 994 n. 12 ("Property subjected to forfeiture because it is exchanged for illegal drugs or purchased with proceeds of illegal drug transactions is the same contraband property changed in form."). These three

---

**18.** Of course, claimant, is entitled to assert that White was an innocent owner of the defendant properties and thereby avoid the forfeiture of the properties. 21 U.S.C. § 881(a)(6). How-

ever, the inability to establish the status of an innocent owner is in no way similar to the finding that someone has violated the law.

distinctions render private treble damage cases inapposite to the issue of whether section 881(a)(6) *in rem* forfeitures should abate.

Although there are no cases addressing the precise issue at hand, claimant insists that the decision in *United States v. Dudley*, 739 F.2d 175 (4th Cir.1984), counsels toward holding that section 881(a)(6) forfeiture proceedings abate. In *Dudley*, the Fourth Circuit was asked to address the then novel question of whether the abatement doctrine was applicable to an action for restitution under 18 U.S.C. § 3579, a criminal statute. In holding that an action for restitution does not abate with the defendant's death, the Fourth Circuit, *in dicta*, contrasted the "exclusively punitive" character of a forfeiture and stated there is a "substantial difference between *restitution* to the person victimized ... [which could include an arm of the government bringing the prosecution] and *forfeiture*, collectable only by the avenging United States government bent on punishing the offender." *Dudley*, 739 F.2d at 177 (emphasis in the original). The Court went on to state that "forfeiture has an exclusively punitive, i.e. penal character." *Id.*

There are several reasons why this Court believes it inappropriate to rely on the *Dudley dicta.* First, it is *dicta* and the suggestion that it should be used to support abatement of a civil *in rem* forfeiture proceeding would go far beyond the narrow holding in that case that a restitution order pursuant to 18 U.S.C. § 3579 does not abate by reason of the defendant's death while appeal was pending. Second, the Fourth Circuit's *dicta* emerged from a discussion high-lighting the distinctions between 18 U.S.C. § 3579 and 21 U.S.C. § 848. Section 848 is a criminal *in personam* forfeiture statute which requires the defendant to be engaging in a continuing criminal enterprise prior to forfeiture of the defendant's profits and property connected with such enterprise. Here, section 881(a)(6) is a civil *in rem* proceeding against property which requires no conviction or finding of guilt on the part of the owner of the property.

Third, the Fourth Circuit relied, in part, on *United States v. Oberlin*, 718 F.2d 894 (9th Cir.1983), a case which held that a criminal conviction under section 848, which included a forfeiture, abated upon the defendant's death.[19] This again, is entirely different from an *in rem* proceeding that requires no prosecution of the owner. Indeed, if the owner of the property can establish that he is entitled to the innocent owner status, the property will not be forfeited. 21 U.S.C. § 881(a)(6).[20] Viewed in context, the most that can be implied from the *dicta* is that the Fourth Circuit would apply the abatement doctrine to a criminal *in personam* forfeiture proceeding such as the one authorized by 21 U.S.C. § 848.

Claimant makes much of the fact that the Fourth Circuit in *Dudley* relied on *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), for support of his contention that section 881(a)(6) should be construed as penal for purposes of the abatement doctrine. In *One 1958 Plymouth*, the defendants' car was stopped and searched without a warrant by law enforcement officers and found to contain 31 cases of liquor not bearing Pennsylvania tax seals. The defendants were arrested and charged with violation of Pennsylvania liquor laws and a forfeiture proceeding was also initiated against the car pursuant to a Pennsylvania statute.

The Supreme Court was asked to determine whether evidence seized in violation of the Fourth and Fourteenth Amendment could be used to support the forfeiture. The Court held that the exclusionary rule is

---

**19.** Claimant failed to advise the Court that the United States obtained a subsequent civil forfeiture of Mr. Oberlin's property under section 881(a)(6) in *United States v. United States Currency in the Amount of $110,000*, 735 F.2d 326 (9th Cir.1984). In that case, a judgment of forfeiture was recommended after Mr. Oberlin died, his widow having formally elected not to

intervene. Five months after forfeiture, Oberlin's widow's application to intervene was denied. On appeal the Ninth Circuit dismissed for want of jurisdiction over the *res* since the forfeiture judgment had already been executed.

**20.** See footnote 18, *supra.*

applicable to forfeiture proceedings such as the one under its review. In so holding, the Court noted that forfeiture proceedings are quasi-criminal in nature and like criminal proceedings are designed to penalize for the commission of a crime. 380 U.S. at 700, 85 S.Ct. at 1250. The Court went on to state that "[i]t would be anomalous indeed, under those circumstances to hold that in the criminal proceedings the illegally seized evidence is excludable, while in the forfeiture proceedings, requiring the determination that the criminal law had been violated the same evidence would be admissible." *Id.* It is evident that the Supreme Court's primary focus and concern in this case was to avoid the undermining of a fundamental constitutional right.

This Court cannot read into the *One 1958 Plymouth* case, nor does the Court believe the Fourth Circuit intended to intimate that its reliance on that opinion should be construed to support a finding that a forfeiture under section 881(a)(6) suggests or requires the application of the abatement doctrine.[21] To say that one civil forfeiture statute is quasi-criminal in character for purposes of holding that certain constitutional safeguards are afforded to the owner of the property is not to say that, for all purposes and in all situations, civil *in rem* forfeitures are to be viewed as synonomous with criminal proceedings. *See, e.g., United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); *United States v. $2,500 in United States Currency,* 689 F.2d at 15–16.

Throughout the remainder of claimant's argument in support of the applicability of the abatement doctrine to this case, he repeatedly relies on cases without analyzing the context in which they arose. *See, e.g., United States v. Grannis,* 172 F.2d 507, 514–15 (4th Cir.), *cert. denied,* 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727

(1949) (civil action for damages and forfeiture for making false claims under 31 U.S.C. § 231 does not abate); *Barnes Coal Corp. v. Retail Coal Merchants Association,* 128 F.2d 645 (4th Cir.1942) (triple damages for violations of Sherman Anti-Trust Act survive the death of the person by or against whom it might have been brought); *United States v. Woodbury,* 359 F.2d 370 (9th Cir.1966) (same holding as *United States v. Grannis*); *United States v. Posner,* 269 F.2d 742 (3rd Cir.1959) (United States entitled to recover double consideration under Surplus Property Act although defendant died before trial).[22] Those cases have been reviewed by the Court and were found to be either misinterpreted or irrelevant. In view of the well-established maxim that a case's holding is no broader than the facts presented, claimant's reliance upon authority presenting dissimilar factual and legal issues, without presenting any rationale for an expansive reading of those opinions, is misplaced.

Lastly, the claimant relies on 28 U.S.C. § 2404, which provides as follows:

A civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants.

This statute, enacted in 1948, was designed to protect the United States from being deprived of pursuing a civil damage action against the estate of an individual defendant by reason of his death. Claimant asserts that, if Congress wanted civil forfeiture actions to survive in circumstances such as are presented in this case, it would have said so in section 2404. The Court cannot agree with this assertion. A civil *in rem* forfeiture under section 881(a)(6) does not involve an individual defendant but

---

**21.** It should be noted that *One 1958 Plymouth* was decided prior to the enactment of section 881(a)(6). Additionally, while constitutional protections may never be overridden by statute, the abatement doctrine, which originally prevented any proceeding, penal or otherwise, from surviving, has continually been limited in appropriate situations. *See, e.g., Rowe v. United*

*States Fidelity and Guaranty Company,* 421 F.2d 937 (4th Cir.1970).

**22.** If anything, these cases support the Government's position that not all forfeitures are criminal in nature nor so penal that the abatement doctrine applies.

rather defendant property which is incapable of dying. The status of the owner of the defendant property, be he dead or alive, is of no consequence, so long as the defendant property is shown to be derived from illegal drug transactions.

In conclusion, the Court agrees with the opinions in *2639 Meetinghouse* and *$2,500 in United States Currency* that section 881(a)(6) authorizes a civil *in rem* action designed primarily to effectuate broad remedial goals and holds that the abatement doctrine is not applicable to this statute.

## IV. STANDING REVISITED—INNOCENT OWNER DEFENSE

The alleged heirs of Dennis White are four girls ranging in age from 7 years old up to early teens. They live in Jamaica in impecunious circumstances and have never lived with their father in the United States. As discussed in Part II of this opinion, claimant is acting as the guardian of these alleged heirs, pursuant to the Maryland intestate laws, and has asserted a claim to the defendant properties on their behalf. Specifically, claimant asserts that the alleged heirs of Dennis White qualify as innocent owners whose interest in the *res* is exempt from forfeiture under 21 U.S.C. § 881(a)(6). That section provides in part that: "no property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without knowledge or consent of the owner."

There is no dispute, at this point, that these four young girls were without knowledge of White's drug trafficking activities. The dispute is over whether these children have any ownership interest in the defendant properties. According to the claimant, the plain language of section 881(a)(6) protects the innocent minor heirs' interest from forfeiture. Indeed, claimant asserts the Drug Enforcement Administration ("DEA") in its publication, the *Drug Agents' Guide to Forfeiture of Assets* (1981), at pages 162–63, expressly acknowledges that the interests of innocent donees,

heirs and spouses with community property interests are exempt from forfeiture under section 881(a)(6). The Court does not agree.

■ With regard to the DEA publication, in addition to having no binding effect on this Court, this publication makes absolutely no reference to heirs in its discussion of the innocent owner defense at pages 162–63 or elsewhere. Furthermore, and more importantly, by the plain language of section 881(a)(6), in order to assert the defense of innocent owner, the individual must establish that he had an ownership interest in the property at the time of the commission of the unlawful act—in this case, at the time White acquired or purchased the defendant properties. *In re Metmor Financial, Inc.*, 819 F.2d 446 (4th Cir.1987).

■ While White was alive, he owned all the defendant properties in fee simple absolute. Claimant concedes this point. Thus, if White had not died prior to this forfeiture proceeding, no individual other than White could have asserted a claim to the seized properties.

Under the Maryland laws of intestacy, the rights of a prospective heir do not vest until the death of the intestate decedent. *See* MD. Estates and Trusts CODE ANN. §§ 3-101-3-110 (1974, 1986 cum. suppl.). As prospective heirs, the four alleged children of White had, during White's lifetime, nothing, not even a future interest in the properties. Browder, *Basic Property Law*, (3rd ed. 1979) at 215–52. At most, the alleged prospective heirs had only a mere expectancy of inheritance. As noted in *Black's Law Dictionary* (5th ed. 1979) at 517, an:

[e]xpectancy as applied to property, is a contingency as to possession, that which is expected or hoped for. *At most it is a mere hope or expectation, contingent upon the will and pleasure of the landowner, and hardly reaches the height of a property right, much less a vested right, because where there is no obligation, there is no right.* It is a possibility for which a party may under certain circumstances properly hope for or expect. (emphasis added).

So, while claimant correctly points out that Congress specifically directed that the term "owner" should be broadly interpreted to include "any person with a recognizable legal or equitable interest in the property seized," Joint Explanatory Statement of Title II and III, P.L. 95–633, 95th Cong., 2d Sess. *reprinted in* 1978 U.S. Code Cong. & Adm. News 9496, 9518, 9522. This explanatory language cannot reasonably be held to include, as is present here, a mere expectation to inherit the property.

In response, claimant argues that, at the time White died, the expectancy of the alleged heirs to inherit the defendant properties vested under the Maryland intestacy laws and, therefore, the alleged heirs have standing to protect that ownership interest in this litigation. As previously concluded, the Government has complied with the forfeiture procedures and has established the requisite probable cause to support this forfeiture proceeding. The evidence of probable cause is unrebutted. Accordingly, all right, title and interest in the property vested in the Government upon commission of the act giving rise to the forfeiture. 21 U.S.C. § 881(h); *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d at 1364; *Western Pac. Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1287 (9th Cir.1984). ("There is clear authority that when the government initiates forfeiture proceedings, the forfeiture relates back to the time of the violation"). *U.S. v. One Piece of Real Estate, Described in Part as: 1314 Whiterock and Improvements, San Antonio, Bexar County, Tex.,* 571 F.Supp. 723 (W.D.Tex.1983). Section 881(h) is a codification of the relation-back doctrine well-established in current law. *United States v. Stowell,* 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890); Sen. Rep. No. 98–225, 98th Cong., 1st Sess. 191, 215 and 200 (1983). By its terms, this provision applies to all subsections of 21 U.S.C. § 881(a), including subsections (a)(6) and (a)(7), notwithstanding claimant's assertion to the contrary.[23]

For example, in *United States v. $5,644,-540.00 in U.S. Currency,* the court was faced with a similar situation where the relation-back doctrine applied to an individual claiming an ownership interest in property by operation of a state law. In that case, employees of a rent-a-car business discovered a large sum of money, gold coins and platinum bars in the trunk of one of their cars which had been left at a nearby airport. The employees contacted the local police department, which in turn contacted the DEA. After an investigation, the government filed a civil complaint and forfeiture pursuant to 21 U.S.C. § 881(a)(6). Numerous individuals filed claims for the properties, including the employees who alleged that they were the finders of lost property under California Civil Code Section 2080 *et seq.* The state comptroller also filed a claim alleging that the *res* was unclaimed property and, as such, should escheat to the state pursuant to California Code of Civil Procedure section 1520. After determining that the government had made the requisite unrebutted showing to support the forfeiture, the court held that, by operation of 21 U.S.C. § 881(h), "[t]he government owned the property before any of the claimants knew of its existence, and, therefore, none of the [claimants] has a valid claim to the property." 799 F.2d at 1364.

Specifically with regard to the state comptroller's claim, which relied on the state unclaimed property laws, the court stated:

> The question is not whether the state laws are valid. Rather, the question is whether the state laws ever became applicable to the property. The resolution of this issue turns on the question of when the government's interest in the property arose. *Compare State of New Jersey v. Moriarity,* 268 F.Supp. 546, 563 (D.N.J.1967) (competing claims to contraband property by state and federal government resolved by determining the

---

**23.** Indeed, counsel for the claimant acknowledged the applicability of section 881(h) to all of section 881(a) and stated in his book: "The new subsection (h) by its term applies to all property

in section 881(a) *without exception."* Smith, *Prosecution and Defense of Forfeiture Cases* (1985) at 3–35. (emphasis added).

time at which respective interests attached). As stated earlier in this opinion, all right, title, and interest in the property vested in the government at the time of the illegal transaction. Therefore, the property cannot be considered unclaimed, lost, or abandoned property to which the California Unclaimed Property Law applied.

799 F.2d at 1365.

Likewise, in the instant case, the Government owned the property before the four alleged children of White ever became his heirs. Therefore, the property cannot be considered part of White's estate. Because the Maryland intestate laws apply only to White's estate, they do not provide the alleged heirs with an interest in the defendant properties. Without any recognizable interest in the defendant properties, the alleged heirs lack standing to contest the forfeiture. *See also Reckmeyer v. United States*, 809 F.2d 786 (4th Cir.1987) (unpublished) (applying the relation-back doctrine codified in 21 U.S.C. § 853(c) to preclude a wife's claim for property held by tenancy-in-common or tenancy-by-the-entirety under state law, which was forfeited as a result of her husband's illegal drug activities under 21 U.S.C. § 853(a)).

The claimant argues that applying the relation-back doctrine to section 881(a)(6) might be inconsistent with the innocent owner defense provided in that subsection and relies on *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2nd Cir. 1986), and *United States v. Four Million, Two Hundred Fifty-Five Thousand, Six Hundred and Twenty-Five Dollars and Thirty-Nine Cents*, 762 F.2d 895 (11th Cir. 1985), for the proposition that the Government recognizes that the relation-back doctrine does not cut off the innocent owner defense of a subsequent transferee of drug proceeds, because the Government did not raise this issue in either of these cases. The Court finds this argument meritless.

In the first place, the two cases cited by claimant are factually distinguishable. In both cases, the claimants were the owners of certain bank accounts containing, in part, money which the Government claimed should be forfeited as proceeds traceable to narcotics transactions.[24] To say that these claimants did not have standing to assert the innocent owner defense by virtue of the relation-back doctrine would be like saying that White, or his personal representative acting on his behalf, do not have standing in this case. The claimants in these cases are no more to be considered subsequent transferees of drug proceeds than was White when he acquired his money from other persons as a result of drug exchanges. The owner of a bank account, like the owner of money, would be entitled to standing to defend against a forfeiture on whatever grounds are applicable, including the innocent owner defense.

Furthermore, and more importantly, in neither case is the relation-back doctrine mentioned. This may have been because it was obvious to the Government that this doctrine was inapplicable to the situation or it may have been the result of litigation strategy. That is a matter of speculation in which this Court shall not engage. Rather, the Court is persuaded by the holding in *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d at 1364–65, in which the relation-back doctrine was raised, discussed and decided in a manner directly applicable to the facts of this case. White's alleged heirs, like the finders of lost unclaimed property in *$5,644,540.00 in U.S. Currency*, have no standing to contest the instant forfeiture. *See also, In re Metmor Financial, Inc.*, 819 F.2d at 448 (no third party can acquire a legally valid interest in the property from anyone other than the Government, *after* the illegal act takes place).[25]

---

**24.** In *Banco Cafetero Panama*, the claimant was a bank which owned the accounts while in *Four Million, Two Hundred Fifty-Five Thous., Six Hundred and Twenty-Five Dollars and Thirty-Nine Cents*, individual claimants owned the accounts.

**25.** *Metmor* also defeats claimant's assertion that an innocent mortgagee who invested lawfully obtained money in defendant property *before* any illegality occurred does not need to invoke the innocent owner provision in section 881(a)(6) for this is exactly the type of individu-

## V. CONSTITUTIONAL CHALLENGE

Claimant has asserted, on behalf of the alleged heirs, that, under the circumstances of this case, the allocation of the burden of proof under 19 U.S.C. § 1615 denies the heirs due process because the evidence to rebut the Government's probable cause showing largely disappeared at the time of White's death. Therefore, because White did not keep financial records of his alleged legitimate income sources and claimant admittedly is unable to reconstruct White's finances, due process requires that the Government's burden of proof be elevated to showing, by a preponderance of the evidence, that the *res* is subject to forfeiture.[26]

Having no standing in this litigation, the alleged heirs, as represented by claimant, are not in a position to challenge the constitutionality of burden of proof under 19 U.S.C. § 1615. However, even if the alleged heirs were permitted to assert such an argument, the Court finds it patently frivolous. The constitutionality of the burden of proof under § 1615 has consistently been upheld. *See e.g., United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 (1st Cir.1987); *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281 n. 2 (9th Cir.1983) (citing other cases).

The facts of the instant case warrant no contrary holding. The Government has turned over approximately 300 pages of documents to claimant in discovery and this Court has given claimant more than enough time to investigate his case, since this litigation was initiated on June 26, 1986. If claimant cannot meet his burden of proof, it establishes not that the allocation of that burden is unconstitutional, but that it is very likely that the defendant properties were acquired in violation of the law. As claimant's counsel states in his book, *Prosecution of Forfeiting Cases, supra* at 4–75.

The claimant in a proceeds case under Section 881(a)(6) is not faced with a burden of proof that is difficult to sustain *if the property is not the proceeds of any exchanges.* Hence there is nothing unfair about placing the burden of coming forward with evidence rebutting the government's probable cause showing on the claimant (emphasis added).

## VI. CONCLUSION

For the reasons set forth above, and there being no genuine issue of material fact, the Court concludes that the Government, having made the requisite showing of probable cause, is entitled to summary judgment and the defendant properties should be forfeited to the United States.

A separate Order will be entered confirming the rulings herein.

---

al this provision is designed to protect. *Metmor,* 819 F.2d at 449.

**26.** While it need not decide this issue, the Court finds and holds that the Government has met the preponderance standard, applying that standard to the summary judgment motion as mandated by *Celotex Corp.,* 477 U.S. at ——, 106 S.Ct. at 2553–54; *Anderson,* 477 U.S. at ——, 106 S.Ct. at 2510–11.