UNITED STATES of America

v.

**ALL THAT LOT OF GROUND KNOWN AS 2511 E. FAIRMOUNT AVENUE, BALTIMORE, MARYLAND 21224 and the Improvements Thereon.**

Civ. No. H–88–3325.

United States District Court,
D. Maryland.

Oct. 16, 1989.

Asst. U.S. Atty. Glenda G. Gordon, and Asst. U.S. Atty. Robert E. Sims, Baltimore, Md., for plaintiff.

Benjamin Lipsitz, Baltimore, Md., for claimants.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Chief Judge.

Pending before the Court in this consolidated civil action is a motion for summary judgment filed by plaintiff United States of America. The government has here instituted seven separate civil forfeiture suits against seven separate parcels of real estate pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.* (hereinafter "the Act"). Forfeiture of these seven parcels has been sought by the government on the ground that the properties were purchased with proceeds traceable to the sale of narcotics or were used to facilitate such sale. *See* § 881(a)(6) and § 881(a)(7).

Bernard Kaufman and Carmela Kaufman, his wife, have duly filed claims in these seven suits and are here contesting these forfeitures. These claimants, along with their deceased son, Thomas Kaufman, purport to hold legal title to the properties at issue either in their own names or as stockholders of a corporation. In its Memorandum and Order of February 1, 1989, this Court denied the government's motion to strike the Kaufman's claims in two of these consolidated cases. In that ruling, the Court noted that Thomas Kaufman is a suspected drug dealer who is claimed by the government to have bought or im-

proved the seven properties at issue with proceeds derived from narcotics trafficking.

As to five of the seven properties, the government, in seeking summary judgment under Rule 56, F.R.Civ.P., is here contending that the Kaufmans have produced insufficient evidence to create genuine disputes of material fact concerning the validity of their claims to the properties. First, the government argues that it has met its initial burden of proving that probable cause exists to support forfeiture of the five properties in question. As to three of the properties, the government further argues that claimants do not even have any cognizable legal interest because of the relation-back provisions of the Act. Contending that it has thus carried its burden of proof, the government next asserts (1) that claimants have responded to their motion for summary judgment with no evidence indicating that any of the properties were not bought with the proceeds of narcotics trafficking; and (2) that claimants cannot meet their burden of showing that they qualify as "innocent owners" of these properties within the meaning of the Act.

In opposing the pending motion, claimants rely almost exclusively on their own deposition testimony. They assert that genuine disputes as to material facts exist in this record as to each of the elements of the government's case. Primarily, claimants are here contending that the record affords a basis whereby a trier of fact could indeed conclude that claimants were "innocent owners" of the properties.

Memoranda in support of and in opposition to the pending motion for summary judgment have been reviewed by the Court. Oral argument has been heard in open Court. For the reasons to be stated herein, this Court finds and concludes that the government's motion for summary judgment must be granted in part and denied in part.

I

*Facts*

The background facts in this case have been set forth in the Court's Memorandum and Order of February 1, 1989 but bear repeating and expanding for purposes of the pending summary judgment motion. As noted, the government has instituted separate forfeiture actions against seven different properties in the Baltimore metropolitan area. All seven cases have been consolidated for all purposes pursuant to Rule 42(a), F.R.Civ.P. These seven properties are located at (1) 2511 East Fairmount Avenue; (2) 1516–1518 North Gay Street; (3) 2800 McComas Avenue; (4) 518 Middle River Road; (5) 11028 Bird River Grove Road; (6) Lot # 16, Galloway Road; and (7) 3713 Rush Road and 70 Surrounding Acres. The government concedes that, with respect to the Fairmount Avenue and Gay Street properties, disputes exist as to issues of material fact, rendering Civil Nos. H–88–3325 and H–88–3326 unsuitable for disposition by way of summary judgment. The five remaining properties are the subject of the pending motion for summary judgment.

The title owners of four of the five properties include claimants Bernard and Carmela Kaufman. The title owner of the fifth property, Lot # 16, Galloway Road, is Rocks View Manor, Inc. Section 881(a)(6) of the Act provides the legal basis for the government's claim that all five properties are subject to forfeiture, and, relying on that statute, the government is here contending that the properties were all bought with the proceeds of drug trafficking. Insofar as the Rush Road property is concerned, the government seeks forfeiture of that parcel and the substantial improvements thereon based on the additional ground, pursuant to § 881(a)(7), that such property was used to facilitate the sale of narcotics.

The factual basis for the government's position is as follows. On August 12, 1988, claimants' son, Thomas Kaufman, was shot and killed in Washington, D.C., apparently as the result of an execution-style murder which was related to his involvement in the distribution of narcotics. Since June 1987, the Narcotics Division of the Baltimore County Police Department had been investigating the cocaine trafficking activities of

Thomas Kaufman in Baltimore and Harford Counties. During this investigation, it was revealed that Thomas Kaufman had stored some of his cocaine and money in metal ammunition boxes buried at the house of his mother, Carmela Kaufman. Her home was located at 711 Seneca Garden Road, Baltimore, Maryland.

Several days after the murder of Thomas Kaufman, search and seizure warrants were issued pertaining to the property located at 711 Seneca Garden Road. During their search of these premises, law enforcement officers discovered that Bernard and Carmela Kaufman were indeed residents of the house located at this address and that Thomas Kaufman had a room there. Among the items seized from the room of Thomas Kaufman were documents revealing extensive financial information relating to the real estate holdings, bank accounts, stocks, and other monetary interests of Thomas Kaufman.

The residence at 711 Seneca Garden Road had been the site of earlier incidents. In February of 1984, officers of the Baltimore County Police Department had obtained and executed a search and seizure warrant directed at the home. The police searched the entire house, including an old safe in the basement, because of their belief that Thomas Kaufman then was engaged in narcotics trafficking. About a year later, in April of 1985, two armed assailants entered the home at 711 Seneca Garden Road, looking for drugs and money. The assailants tied up Thomas Kaufman, his mother Carmela Kaufman, and his former girlfriend, Angela Crawford.

On the basis of the information developed by their investigation, law enforcement officers concluded that Thomas Kaufman had purchased numerous parcels of real estate, including the seven involved in this case, with monies he had earned through the distribution of drugs. When the results of this investigation were brought to the attention of United States Magistrate Paul Rosenberg, a warrant was issued for seizure of all seven parcels of real property. On September 9, 1988, the properties at issue in this case were seized by the United States Marshal. The government thereafter instituted these forfeiture proceedings.

## II

### Summary Judgment Principles

It is well settled that a party moving for summary judgment has the burden of demonstrating that no genuine issue of material fact exists and that such party is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see also Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). This burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

One of the purposes of Rule 56 is to require an opposing party, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that the movant is not entitled to the recovery sought. *See* Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick, supra,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). In the absence of such a minimal showing, a party moving for summary judgment should not be required to undergo the considerable expense of preparing for and participating in a trial. *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969).

In two recent cases, the Supreme Court has had an opportunity to clarify and expand the principles applicable to a trial court's consideration of a summary judgment motion filed under Rule 56. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson,* the Supreme Court held that the standard for granting a summary judgment motion under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P. 477 U.S. at 250–51,

106 S.Ct. at 2511–12. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512 (emphasis added).

In *Catrett*, the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule.Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555.

The Fourth Circuit has emphasized, however, that summary judgment is seldom appropriate in cases in which particular states of mind are decisive as elements of a claim or a defense. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). In *Morrison v. Nissan, Ltd.,* 601 F.2d 139, 141 (4th Cir.1979), the Fourth Circuit explained that when the disposition of a case turns on a determination of intent, a trial court must be especially cautious in granting summary judgment, because the resolution of that issue depends so much on the credibility of witnesses during direct and cross-examination. *See also* 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2730 at 236–65 (2d ed. 1983).

Applying these principles to the facts of record here, this Court concludes that the government's motion for summary judgment must be granted in part and denied in part.

### III

### *Probable Cause*

■ In a civil forfeiture proceeding brought under § 881(a)(6) and § 881(a)(7), the government has the initial burden of demonstrating probable cause for the forfeiture, *i.e.,* that the properties in question were bought with the proceeds of narcotics transactions. *United States v. Santoro,* 866 F.2d 1538, 1544 (4th Cir.1989). Once the government has satisfied this initial burden, then the burden of proof shifts to the claimants to demonstrate by a preponderance of the evidence that the properties are not subject to forfeiture, *Id.* (citing 21 U.S.C. § 881(d)), or that the claimants are the innocent owners of that property. *See* § 881(a)(6) and § 881(a)(7).

■ In this particular case, the government's showing of probable cause for the forfeiture of these five properties is substantial and is not controverted by any evidence presented by claimants. The government here relies on the uncontroverted affidavits of two law enforcement officials, namely Detective Wayne T. Ritter of the Baltimore County Police Department and Special Agent Czerski, Jr. of the Drug Enforcement Administration.[1]

---

1. It is well established that "[t]he Government's showing of probable cause and the resulting civil forfeiture may be based on otherwise inadmissible hearsay." *United States v. Miscellaneous Jewelry,* 667 F.Supp. 232, 238 (D.Md.1987) (citing *United States v. One 56–Foot Motor Yacht*

These affidavits demonstrate unequivocally that Thomas Kaufman over a period of some years sold narcotics on a very large scale. In his affidavit, Detective Ritter stated that controlled purchases of cocaine were made directly from Kaufman by a confidential informant who was working under government supervision. An "owe sheet" was recovered as a result of the search of Thomas Kaufman's room at 711 Seneca Garden Road, indicating that Kaufman was owed some $80,000 for drugs at the time of his death. Also recovered was extensive financial information relating to Thomas Kaufman's real estate, bank accounts, stocks and other monetary interests. Special Agent Czerski chronicles in great detail the long-standing history of Kaufman's narcotics trafficking. Two individuals, Richard Maier and Kevin Brokke, furnished Czerski with many details of Kaufman's extensive drug trafficking activities.

Furthermore, the evidence of record does not indicate that Thomas Kaufman generated enough funds through his allegedly legitimate business enterprise, Maryland Yacht Maintenance, to account for the large cash expenditures that he made between 1985 and 1988. Indeed, it is doubtful from the record here that the corporation generated much revenue at all. Thomas Kaufman reported income of only $9,517.14 in 1985 and income of only $13,786.49 in 1986. None of the searches of the residences of Thomas Kaufman revealed any documents typically associated with a legitimate small business, such as financial statements, ledgers, receipts, correspondence, or the like. Richard Maier, a long-time associate of Thomas Kaufman, told Special Agent Czerski that Maryland Yacht Maintenance was a "bogus company."[2]

In 1985 Thomas Kaufman paid over $19,000 in cash for a motor home, a purchase which by itself was more than double his declared gross income for that year. The government has further demonstrated by way of the two affidavits that Thomas Kaufman invested significant sums of money toward the purchase and/or improvements of each of the five properties in issue. With reference to the Rush Road property, the government has produced substantial evidence indicating that cocaine was buried at this property and was stored in one of the secret rooms.

In the face of this substantial evidence presented by the government, claimants hardly even dispute, let alone rebut, the government's showing that probable cause exists for these forfeitures. In opposing the pending motion, claimants rely essentially on an "innocent owner" defense.

Pursuant to Rule 56(d), F.R.Civ.P., this Court, in a case which is not completely disposed of by way of a motion for summary judgment, may make findings of fact which "exist without substantial controversy" and which "shall be deemed established" upon the trial of this case. Since the government has here conclusively established the existence of probable cause for these five forfeitures, such a finding is hereby made and will be binding on the parties at the trial of those cases which go forward.[3] The Court's finding that the government has here met its burden of establishing probable cause for these forfeitures should be included in the Pretrial Order to be entered in this case.

## IV

### Standing

Besides contending that claimants have not met their burden of showing that the properties in question are not subject to forfeiture, the government also argues that, as to three of the properties (namely,

---

*Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983)).

**2.** Claimants have also referred to a supposed limousine business in which their son was involved, but no concrete evidence of the financial status of such business has been produced by claimants.

**3.** Whether a similar finding should be made as to the Fairmount Avenue and Gay Street properties will be determined at the final pretrial conference to be held in this consolidated case.

Lot # 16, Galloway Road, 2800 McComas Road and 11028 Bird River Grove Road), the claimants do not have standing to contest the forfeitures sought. The government further contends that claimants lack standing to contest forfeiture of the home on the Rush Road property. Although denying the government's earlier motion to strike, this Court invited the parties to address issues of standing anew pursuant to a motion for summary judgment filed after the completion of discovery. The government has done so here.

■ In order to establish standing to contest a forfeiture, a claimant has the burden of proving either an ownership interest in the property, or some lesser interest, such as possession, in that property. *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir.1986); *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232, 235 (D.Md. 1987). The mere assertion of legal title to property may not be sufficient to establish standing, for issues of actual possession, control and financial stake must also be considered. *United States v. One 1945 Douglas C–54*, 647 F.2d 864, 866–67 (8th Cir.1981) (affirming trial court's judgment denying standing to title owner). "[P]eople engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name"; therefore, "courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else." *United States v. One 1977 36' Cigarette Ocean Racer*, 624 F.Supp. 290, 295 (S.D.Fla.1985).

■ Claimants in this case assert an ownership interest in Lot # 16, Galloway Road on the ground that they are stockholders of a corporation called Rocks View Manor, Inc., which holds record title to the property. However, in their depositions, the Kaufmans admitted that they didn't know whether the company had ever been incorporated. Ms. Kaufman also admitted that they had not invested any funds in the corporation. Rocks View Manor, Inc. was incorporated on July 30, 1986 by Bernard Kaufman, Carmela Kaufman and Thomas Kaufman. No stock was ever issued, and no tax returns were ever filed by the corporation. The affidavit of Detective Ritter indicates that Lot # 16, Galloway Road was sold by a Martha M. Hayslett to Thomas Kaufman for $10,000 and that Thomas Kaufman paid a $700 deposit to Ms. Hayslett. None of these facts are controverted by the claimants. Since the Kaufmans have produced no evidence of any ownership interest in Rocks View Manor, Inc. or in the Galloway Road property titled in the corporation's name, the only manner in which the Kaufmans would have an interest in the corporation and the property is as heirs or donees of Thomas Kaufman.

■ Such an interest, however, would be precluded by the relation-back doctrine contained in 21 U.S.C. § 881(h). Under that doctrine, all right, title or interest in a property vests in the government upon commission of an act giving rise to the forfeiture. *See Miscellaneous Jewelry*, 667 F.Supp. at 248–49. Subsequent heirs or donees of the property cannot under the statute have a superior interest to that of the government. *Id.* The Galloway Road property was subject to forfeiture under § 881(a)(6) as soon as Thomas Kaufman used drug proceeds to pay for the parcel of real estate, thereby passing title to the government under § 881(h). Any interest which the Kaufmans might have obtained was defeated by the government's prior interest, since their son would have had nothing to give them had he not first purchased the property with funds obtained by trafficking in drugs.

Similarly, with respect to the two properties at Bird River Grove Road and McComas Road, the claimants' names appear on the deeds but no evidence has been produced to establish claimants' ownership interest in these properties. The Kaufmans admit that they invested none of their own funds in either of these two properties. The property at Bird River Grove Road was paid for entirely by Thomas Kaufman. With respect to the McComas Road property, the evidence shows that Thomas Kaufman paid part of the purchase price and

closing costs himself and obtained a mortgage from Hopkins Federal Savings Bank to finance the remainder. No evidence exists that the Kaufmans made a single mortgage payment before their son's death. Indeed, the evidence indicates that Thomas Kaufman either paid the mortgage himself or allowed his tenants, Richard and Ruth Ann Maier, to pay the Bank directly. On this record, therefore, the government has demonstrated that the Kaufmans' claim of ownership of these properties based on their bare legal title is a sham. Thus, the only way the Kaufmans can assert an interest in these properties is by way of a gift or inheritance from their son. In either event, the relation-back doctrine precludes any such claim.

■ The 70–acre Rush Road property is somewhat different, inasmuch as there is no dispute that the land itself was purchased by the claimants some years ago and that none of their son's money was used for that purchase. Claimants clearly have standing to contest the forfeiture of the land. However, the expensive home which was built on part of that land was paid for solely by Thomas Kaufman. The claimants admit that they advanced no sums toward construction of this house, and they have presented no evidence of any other type of cognizable ownership interest in the home. It would therefore appear that claimants lack standing to contest forfeiture of the home on the Rush Road property. However, a final ruling on this question will not be made until the trial. Although the home may be subject to forfeiture, it cannot be determined on the present record whether some of or all of the underlying land which surrounds the home may likewise be subject to forfeiture. Another issue which arises is whether the Rush Road property was used to facilitate the sale of narcotics. Since a trial is in any event necessary in this case, the parties can further address these issues at the time of trial.

In sum, this Court finds and concludes that claimants have failed to carry their burden of proof of establishing standing with respect to three of the parcels at issue here. Claimants are not entitled to contest forfeiture of the properties at Galloway Road, Bird River Grove Road, and McComas Road. Questions pertaining to the forfeiture of the home and surrounding land at Rush Road will be decided at the time of trial. Accordingly, the government will be granted summary judgment as to the three parcels in question because of lack of claimants' standing.

## V

### Claimants' Defenses

Insofar as the Middle River Road and the Rush Road properties are concerned, claimants can prevail at trial only by proving by a preponderance of the evidence that the properties are not subject to forfeiture or that they are innocent owners thereof. See United States v. $4,255,000, 762 F.2d 895, 904, 906–07 (11th Cir.1985). Although the Kaufmans cannot carry their evidentiary burden on the first issue, this Court concludes that they have produced sufficient evidence to survive summary judgment as to the second issue.

First, the Kaufmans cannot prove that the two properties are not subject to forfeiture. The Kaufmans have produced no evidence to indicate that the Middle River Road property and the substantial improvements at Rush Road were not purchased with drug proceeds.[4] With respect to the home at the Rush Road property, the Kaufmans further cannot prove that it was not used to facilitate the sale of narcotics.[5]

Indeed, claimants essentially have not disputed the government's evidence of their son's drug dealings. Rather, both parents disclaim any direct knowledge of their son's narcotics activities, stating that they saw their son infrequently and asked him few questions. Furthermore, both par-

---

**4.** As noted, the claimants have established that the land at Rush Road was owned by them and that drug proceeds were not used for such purchase.

**5.** Whether the land at Rush Road was used to facilitate the sale of narcotics will have to await further proof.

ents admitted that they had no idea how much their son earned from his boat or limousine business. In short, claimants cannot produce "objective independent evidence" that the purchases of these properties were attributable to some legitimate business enterprise. *See, e.g., United States v. Currency Totalling $29,500.00,* 677 F.Supp. 1181, 1185–86 (N.D.Ga.1988).

Claimants seek to create a factual dispute by asserting that Richard Maier and Conrad Snedegar provided some or all of the funds toward the purchase of the Middle River Road property. However, it is questionable whether the Kaufmans have standing to assert ownership interests on behalf of these two individuals. In any event, the Court need not reach this issue as claimants have produced insufficient evidence that Maier and Snedegar actually invested in the Middle River property as alleged.

■ Claimants also challenge the government's showing of probable cause on the ground that the government has not demonstrated that funds used by their son to pay for these properties must have come only from drug proceeds. Claimants misunderstand the burden of proof assumed by them under the facts of this case. Once the government has demonstrated probable cause that these properties were purchased with drug proceeds, the claimants must then bear the burden of proving that the funds used to purchase the properties were not drug proceeds. This the claimants have not done.

■ Second, claimants proffer an innocent owner defense. Sections 881(a)(6) and 881(a)(7) both contain identical so-called "innocent owner" provisions. Each section provides that

no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Where claimants seek to invoke this "innocent owner" defense, such claimants have the burden of proving that they lacked actual knowledge that the proper-

ties were bought with the proceeds of narcotics trafficking. " 'The government need not prove, and the district court need not find, that the claimant *had* actual knowledge. Rather, it is the claimant's responsibility to prove the *absence* of actual knowledge.' " *United States v. $10,694.00 U.S. Currency,* 828 F.2d 233, 235 (4th Cir.1987) (quoting *United States v. $4,255,000,* 762 F.2d 895, 907 (11th Cir.1985)).

■ In depositions taken in this case, each claimant has denied under oath knowing that their son purchased the properties with the proceeds of drug trafficking. Since their "innocent owner" defense in this case turns on their actual, subjective knowledge of the underlying criminal activity, claimants assert that the issue is one which is unsuitable for resolution by way of summary judgment inasmuch as a determination of their credibility is involved. This Court would agree.

Admittedly, a number of significant, undisputed facts have been established by the government. The Kaufmans were aware that their home at 711 Seneca Garden Road was searched by the Baltimore County Police Department in 1984. Carmela Kaufman, Thomas Kaufman and his girlfriend, were kidnapped at the same home in 1985 by armed assailants looking for money and drugs at the house. The claimants were aware of their son's large cash expenditures, purchases and payments. These included the purchase of a motor home in 1985 with $19,000 in cash, as well as the construction of a large home on Rush Road. The Kaufmans assert little or no knowledge of their son's yacht or limousine business, but should have known enough about their son's financial affairs to suspect that their son's obvious wealth could not have come from legitimate sources. Thomas Kaufman was listed as a dependent on his mother's tax return as late as 1984, and his father even helped his son qualify for a car loan. The Kaufmans admitted in their depositions that they were aware of all these events, but nevertheless denied any actual knowledge of their son's narcotics trafficking activities.

Relying on two circuit court opinions, the government urges that summary judgment is appropriate even though the "innocent owner" defense is supported by claimants' deposition testimony. *See, e.g., United States v. 1980 Red Ferrari, VIN No. 9A0034335*, 827 F.2d 477 (9th Cir.1987); *One Blue 1977 AMC Jeep CJ–5 v. United States*, 783 F.2d 759 (8th Cir.1986). It is argued that claimants have failed to produce substantial evidence to support the defense. This Court would disagree.

Were the trier of fact to give full credit to the testimony of each claimant and little weight to the circumstantial evidence relied upon by the government, the trier of fact might well determine that the "innocent owner" defense had been proved by claimants. A final decision on the issue cannot be made until the Court has determined, after direct and cross-examination, whether the testimony of the Kaufmans is to be credited. Claimants' statements that they lacked actual knowledge of their son's narcotics trafficking, even though substantial proof to the contrary exists, constitute sufficient evidence to create a genuine dispute of material fact. Indeed, it is the claimants themselves who know best their own state of minds. *See Charbonnages, supra.* In this case, questions of credibility and the weight to be given facts of record are presented which are unsuitable for summary disposition.

## VI

### *Conclusion*

For all these reasons, it is this 16th day of October, 1989, by the United States District Court for the District of Maryland,

ORDERED:

1. That the government's motion for summary judgment be and the same is hereby granted in Civil Nos. H–88–3327, H–88–3329 and H–88–3330;

2. That the government's motion for summary judgment be and the same is hereby denied in Civil Nos. H–88–3328 and H–88–3416; and

3. That, pursuant to Rule 54(b), final judgment in these cases will not be entered until after a trial is held.