### UNITED STATES of America

### v.

### ALL THAT LOT OF GROUND KNOWN AS 2511 E. FAIRMOUNT AVENUE, BALTIMORE, MARYLAND 21224 and the Improvements Thereon.

#### Civ. No. H–88–3325.

United States District Court, D. Maryland.

March 14, 1990.

Glenda G. Gordon, Asst. U.S. Atty., Robert E. Simms, U.S. Atty., Baltimore, Md., for U.S.

Benjamin Lipsitz, Baltimore, Md., for claimants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

In an earlier Memorandum and Order entered in this consolidated case and reported at *United States v. 2511 E. Fairmount Avenue*, 722 F.Supp. 1273 (D.Md. 1989), this Court ruled on a motion for summary judgment filed by plaintiff United States of America. These seven consolidated civil actions involve seven separate parcels of real estate located in the Baltimore metropolitan area. The government is here seeking forfeiture of each parcel pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.* In each of the seven complaints, the government has al-

leged that each of the seven properties in question was purchased with proceeds traceable to the sale of narcotics or was used to facilitate such sale. *See* §§ 881(a)(6) and 881(a)(7).

Bernard Kaufman and Carmela Kaufman have duly filed claims in these seven suits and are here contesting these forfeitures. It is the claims of the Kaufmans which have been litigated throughout the course of these proceedings. In its opinion in *United States v. 2511 E. Fairmount Avenue, supra,* this Court granted the government's motion for summary judgment with respect to some of the properties and denied the motion as to other properties. The seven properties involved here are as follows: (1) 2511 East Fairmount Avenue; (2) 1516–1518 North Gay Street; (3) 2800 McComas Avenue; (4) 518 Middle River Road; (5) 11028 Bird River Grove Road; (6) Lot # 16, Galloway Road; and (7) 3713 Rush Road and 70 Surrounding Acres. In previously moving for summary judgment pursuant to Rule 56, F.R.Civ.P., the government conceded that disputes of material fact existed concerning the Fairmount Avenue and Gay Street properties. The motion therefore sought summary judgment only as to the five other properties.

### I  *Prior Rulings*

In its Memorandum and Order of October 16, 1989, this Court granted the government's motion for summary judgment as to the Galloway Road property, as to the Bird River Grove Road property, and as to the McComas Avenue property. 722 F.Supp. at 1280. However, the Court denied the government's motion for summary judgment as to the Middle River Road property and as to the Rush Road property. 722 F.Supp. at 1280–1282. In its previous Memorandum and Order, the Court also ruled, pursuant to Rule 56(d), that the government had conclusively established the existence of probable cause for the forfeiture of all the properties, including the Middle River Road property and the Rush Road property. 722 F.Supp. at 1278.

As a result of the Court's prior rulings of October 16, 1989, there remained for subsequent trial the Kaufmans' claims to four of the seven properties. A pretrial conference was thereafter held pursuant to Local Rule 106, and a Pretrial Order was entered. Prior to the trial date, the government indicated that it would be dismissing the complaints filed in Civil No. H–88–3325 and H–88–3326 involving the Fairmount Avenue and the Gay Street properties. On February 12, 1990, the first day of the trial, the government's oral motion to dismiss these two cases was granted by the Court, and the Court advised counsel that Orders would thereafter be entered dismissing the complaints in those two cases.[1]

### II  *Trial Proceeding*

Commencing on February 12, 1990, the trial then proceeded as to the Middle River Road property and also as to the Rush Road property. Witnesses testified and various exhibits were entered into evidence at the trial. Findings of fact and conclusions of law pursuant to Rule 52(a), F.R. Civ.P., are set forth in this Memorandum Opinion, whether or not so characterized. Much of the evidence was conflicting, and in resolving the issues of fact, due regard has been given to the credibility of the witnesses and the weight their testimony deserved.

The background facts have been set forth in the Court's Memorandum and Order of February 1, 1989 and also in the Court's Memorandum and Order of October 16, 1989. *See* 722 F.Supp. at 1275–1276. Some of these facts will be repeated herein, and others will be set forth as findings made by the Court.

As the Court has previously ruled, the government has as a matter of law demonstrated probable cause for the forfeiture of both the Middle River Road property and the Rush Road property. 722 F.Supp. at 1278. Since the government has met this initial burden in this case, it was the claimants' burden at the trial first to demonstrate by a preponderance of the evidence

---

1. The Court has now determined pursuant to 28 U.S.C. § 2465 that there was reasonable cause for the seizures of those properties and that the claimants are not entitled to costs.

that they have standing to contest these forfeitures. If they have standing, claimants would then be permitted to attempt to prove either (1) that the two properties are not subject to forfeiture or (2) that they were innocent owners of the properties. 722 F.Supp. at 1277, 1280. The first defense is not maintainable here. The Court has previously determined as a matter of law that claimants Bernard and Carmela Kaufman have not been able to produce evidence indicating that funds used by their son to pay for these properties did not come from drug proceeds. Thus, the only issues which remain for determination are whether claimants have standing to contest these forfeitures and whether they have met their burden of establishing their proffered innocent owner defense.

Pursuant to §§ 881(a)(6) and 881(a)(7), no property may be forfeited to the extent of an interest of an owner by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of the owner. Invoking the innocent owner defense in this case, the claimants have the burden of proving that they lacked actual knowledge that the two properties were bought with the proceeds of narcotics trafficking. The claimants also have the burden of establishing standing to contest these forfeitures, namely that they have either an ownership interest in the two properties or some lesser interest such as possession.[2] See 722 F.Supp. at 1278.

At the trial, the government at the outset rested its case, relying on the Court's previous finding as a matter of law that the government had met its burden of establishing probable cause for the forfeiture of the Middle River Road property and also of the Rush Road property. 722 F.Supp. at 1278. The claimants then presented their evidence seeking to satisfy their burden of proving that they had standing as to each of these two properties and that they were innocent owners. Only Carmela Kaufman and her husband Bernard Kaufman testified in support of the claimants' case. Several exhibits were proffered and admitted in evidence. At the close of the claimants' case, counsel for the government moved for a dismissal of their claims pursuant to Rule 41(b) and (c), F.R.Civ.P. After hearing argument, the Court granted the motion as to the Middle River Road property but denied the motion as to the Rush Road property.

### (a) Standing

The evidence pertaining to the Middle River Road property indicated that claimants did not have standing to contest the forfeiture of that property. The evidence disclosed that the claimants had neither an ownership interest in nor possession of that property. The property was purchased in 1988 for the sum of $55,000. The deed of June 29, 1988 indicated that the sellers were James C. Comer and Mary B. Comer, his wife, and that the purchasers were Bernard A. Kaufman, Carmela V. Kaufman and Thomas E. Kaufman. Thirty-five thousand dollars was borrowed for the purchase from Patapsco Federal Savings & Loan Association, secured by a Deed of Trust. The grantors of the Deed of Trust were Bernard, Carmela and Thomas Kaufman. However, no funds of the claimants were ever spent for the purchase of this real property or for the making of payments on the mortgage. According to Bernard Kaufman, $22,000 in cash was given to him by one Conrad D. Snedegar with the request that he purchase the property for Snedegar as a favor. Snedegar did not want his name to be on the deed, and he gave Bernard Kaufman a paper bag with $22,000 in cash. Bernard Kaufman then gave it to his son, and the cash was produced at the settlement. Thomas Kaufman, during his lifetime, made interest and prin-

---

**2.** There was some confusion at the start of the trial concerning whether the Court had previously ruled on the standing issue as it related to the Middle River Road property. A review of the Court's Memorandum and Order of October 16, 1989 indicates that the Court did not previously rule that the claimants did not have standing to challenge forfeiture of the Middle River Road property. The discussion of the Middle River Road property at 722 F.Supp. 1280–1281 pertained to claimants' contention that such property was not subject to forfeiture because it was not purchased with drug proceeds.

cipal payments due under the Deed of Trust.

■ These facts are not sufficient to establish claimants' standing to contest forfeiture of the Middle River Road property. The mere inclusion of claimants' names on the deed is not enough to establish standing. *See* 722 F.Supp. at 1279. No money of the claimants was used either to purchase the property initially or to make payments due under the Deed of Trust. As the Court noted in *United States v. One 1977 36' Cigarette Ocean Racer,* 624 F.Supp. 290, 295 (S.D.Fla.1985), persons engaged in illegal activities often attempt to disguise their interest in property by placing title in some one else's name. In this particular case, the claimants' names were included on the deed as "strawmen" in order to conceal the financial affairs and illegal dealings of their son, Thomas. An Order will accordingly be entered forfeiting the Middle River Road property to the government.[3]

■ Claimants have, however, established their standing to contest the forfeiture of the Rush Road property. In 1956, claimants purchased with their own funds the 70 some acres in Harford County which constituted the property known as 3713 Rush Road. Commencing in 1984, Thomas Kaufman undertook to build an expensive home on the land located at Rush Road. Bernard himself did some of the heating and air conditioning work, the value of which he estimated to be $5,000. In its Memorandum and Order of October 24, 1989, this Court reserved ruling on the question of claimants' standing to contest forfeiture of the home on the Rush Road property. Based on the evidence presented at the trial, this Court concludes that claimants had an ownership interest in both the land and the home and that they have standing to contest these forfeitures.

### (b) Issues Remaining

As a result of prior rulings, the issues which remain for determination by the Court are (1) whether the claimants were innocent owners of the home built on the Rush Road property; and (2) whether any part of the Rush Road property was used to facilitate the sale of narcotics. *See* 722 F.Supp. at 1280. These issues were not decided by the Court when it ruled on the government's motion for summary judgment nor when it ruled on the government's motion to dismiss at the trial.

If the home itself was used to facilitate the sale of narcotics, and if the claimants cannot meet their burden of establishing an innocent owner defense, then the entire 70 acres are subject to forfeiture. The applicable statute clearly provides that all real property which meets the statutory requirements including any interest "in the whole of any lot or tract of land and any appurtenances or improvements" is forfeitable. 21 U.S.C. § 881(a)(7). If, as here, a property is legally described as a single, undivided tract, the entire property is subject to forfeiture if the statutory requirements have been met. *United States v. Santoro,* 866 F.2d 1538, 1543 (4th Cir. 1989).

### (c) The Innocent Owner Defense

■ Both Carmela Kaufman and Bernard Kaufman testified at the trial. Each denied knowing that their son was a drug dealer. Arrayed against their testimony is substantial evidence in the case indicating that various aspects of the dealings of Thomas Kaufman in cocaine were known by them.

Carmela and Bernard Kaufman are husband and wife, and their son Thomas was born on February 13, 1958. Thomas was murdered on August 12, 1988 as the result of an execution-style killing which was related to his involvement in the sale and distribution of cocaine. The record here discloses that for at least five years before his death, Thomas sold and distributed cocaine in the Baltimore metropolitan area. He dealt on a large scale and had available to him substantial sums of cash, which he

---

**3.** Even if claimants were found to be owners and therefore to have standing, the Middle River Road property would still be subject to forfei- ture, since, as discussed hereinafter, claimants have not met their burden of proving that they were innocent owners.

used to purchase real property, cars, and a boat. Other amounts received by Thomas as the result of his narcotics dealing were used to construct the expensive home that he built over a period of years on the Rush Road property.

In late 1980 or early 1981, Carmela and Bernard Kaufman experienced marital difficulties. The couple separated and Carmela left and thereafter resided at 711 Seneca Garden Road, Baltimore County, Maryland. Thomas lived in that home; he had his own room and being an adult came and went as he pleased. Carmela and Bernard were apart for some 7 years, but after their son was murdered, they reunited and are now living together.

Two unusual incidents occurred at Carmela's home which indicated that Thomas Kaufman was trafficking in narcotics. In February of 1984, Baltimore County police officers obtained and executed a search warrant at 711 Seneca Garden Road. Information supplied by confidential informants and contained in the affidavit disclosed that Thomas Kaufman was distributing drugs at the residence and that he dealt in large amounts of marijuana and cocaine. A triple beam scale and other narcotics paraphernalia were seized as a result of this search. Police officer Matrangola telephoned Carmela Kaufman and told her that narcotics had been found at her home. Nevertheless, Carmela permitted her son to continue to reside at her home.

A year later, in April of 1985, two armed men assaulted Thomas Kaufman, his mother Carmela, and his then girlfriend, Angela Crawford, at the Seneca Garden Road residence. All three were tied up by the assailants. In a written statement which she gave to the police on April 30, 1985, Carmela Kaufman stated that one of the assailants said "he wanted money—here, I'm not sure whether he said for drugs or and drugs." One gunman insisted that Thomas Kaufman give them money. The telephone lines had been cut, Thomas Kaufman used his beeper to call a person named Paul, and Carmela heard him say to Paul "I need some money or else."

Carmela knew that her son had a mobile phone, a beeper and his own separate telephone number. He also owned several foreign motor vehicles and a boat. Carmela also knew that her son had large amounts of cash in his possession from time to time. It was readily apparent to any one closely connected to Thomas Kaufman that his allegedly legitimate business enterprises could not possibly have generated the large amounts of cash which he regularly had in his possession.

Significant evidence at the trial was furnished by the witness Joseph Glen, who purchased cocaine from Thomas Kaufman some 10 to 20 times in 1987 and 1988. Glen related that on one occasion, Thomas Kaufman had a kilo of cocaine in the kitchen, one-half of which was to be sold to Glen. Carmela Kaufman came in, saw the open package and became angry. She told her son that she "did not want this shit in the house." Her son merely laughed. Richard Maier, another of Thomas' customers, corroborated the testimony given by Glen. He described how customers would come to purchase cocaine at the Seneca Garden Road home, and he testified that Carmela Kaufman was there on occasion. He likewise recalled an incident when Carmela was in the kitchen and saw Thomas with cocaine, whereupon she told him that he had better "stop that shit." Although both Glen and Maier had previously been convicted of criminal offenses, this Court will credit the testimony they gave in open Court. What they related during their testimony is consistent with other evidence in the case.

Although Bernard Kaufman was not residing at the Seneca Garden Road residence between 1982 and 1988, he had frequent contact with his son and was aware of many of his son's activities. Bernard knew that his son had a mobile phone and a beeper. He knew of his son's cars and jet boat. He was aware that his son had large sums of money in cash available to him, and Bernard had been told of the incident when his son was held at gunpoint by armed assailants. In 1985, Thomas Kaufman furnished $19,000 in cash for the purchase of a mobile home. The bag with the cash

in it was given to the seller in Bernard's presence. In 1987, Bernard attended with his son a settlement which resulted in the purchase of the McComas Road property. *See* 722 F.Supp. 1279. On that occasion, Thomas produced $12,600 in cash from a metal box.

Even more significantly, Bernard Kaufman, when he learned of his son's murder, reacted immediately by going to the new house on Rush Road to remove guns located there. As the witness Glen testified, Bernard wanted to go out "and clean it out" before the police got there. Bernard knew that the house on Rush Road had a secret room with a hidden entrance and that a large safe was located in the room.

After considering all of the evidence of record here, this Court finds and concludes that claimants have not met their burden of proving that they were innocent owners of the Rush Road property. The Court will not credit the testimony of Carmela and Bernard that they did not know that their son was dealing in drugs. After seeing and hearing each of the claimants on the witness stand, this Court does not believe their testimony that they did not know that proceeds of drug trafficking were used by Thomas to build the new home on the Rush Road Property. Substantial evidence to the contrary exists that both Carmela and Bernard knew that their son Thomas was a drug trafficker and that he used monies earned through the distribution of drugs to build his new home on the Rush Road property and to acquire other real estate. For these reasons, claimants cannot prevent forfeiture of the Rush Road property on the basis of their proffered innocent owner defense.

### (d) Facilitation of Sale of Narcotics

Claimants finally contend that the entire Rush Road property is not subject to forfeiture because it was not used to facilitate the sale of narcotics. Counsel for claimants have suggested that, if their innocent owner defense is rejected by the Court, merely the house and a reasonable surrounding area would be subject to forfeiture. Claimants object strenuously to

forfeiture of the remainder of the 70 acre Rush Road tract, and they have offered evidence indicating that they plan to subdivide this land.

Quite clearly, the home constructed on the Rush Road property was used to facilitate the sale of narcotics by Thomas Kaufman. The witness Glen testified that he had been to the Rush Road house, had entered the secret room which contained the safe, and had purchased cocaine there. After Thomas was murdered, the home was searched and among the items recovered were 8 packages of a white powder, plastic bags and a firearm, namely an AK–47.

Under the circumstances, the entire 70 acres including the home is subject to forfeiture. If, as here, a portion of the undivided real property was used to facilitate the sale of narcotics, the entire property is subject to forfeiture. *United States v. Santoro, supra* at 1543. Claimants therefore cannot avoid forfeiture of the entire 70 acres at Rush Road, including the new home erected on the property.

### III Conclusion

For the reasons stated, this Court concludes that both the Middle River Road property and the Rush Road property are subject to forfeiture in these proceedings. Appropriate Orders will be entered by the Court as to all seven of the properties involved in these proceedings.