947 F.2d 942
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE LOT OR PARCEL OF GROUND KNOWN AS 1077 KITTRELL STREET,
NORFOLK, VIRGINIA, Including All of Its Buildings,
Improvements and Appurtenances,
Defendant-Appellant,
Roosevelt Riddick, Claimant-Appellant,
and
$351,927 In United States Currency; One Lot or Parcel of
Ground Known as 1068 Joyner, Norfolk Virginia,
Including All of Its Buildings,
Improvements and
Appurtenances, Defendants.
 
 No. 90-7259.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 13, 1991.
Decided Nov. 7, 1991.
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CA-89-337)
 William P. Robinson, Jr., Robinson, Zaleski & Lindsey, Norfolk, Va., for appellants.
 Henry E. Hudson, United States Attorney, Mark A. Exley, Assistant United States Attorney, Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL, SPROUSE and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Roosevelt Riddick appeals from a district court order directing the forfeiture of a piece of real property known as 1077 Kittrell Street, in Norfolk, Virginia ("the property"), in a civil action brought pursuant to 21 U.S.C. § 881(a) (1981). The United States brought the action following the conviction of the resident of the property, Joseph Riddick, the brother of Roosevelt, for narcotics violations, including distribution and conspiracy to distribute heroin, and for violating various federal firearms laws. In finding that the property belonged to the United States, a property forfeited under Section 881(a), the district court rejected Roosevelt's claim that he was an "innocent owner" of the property entitled to be treated as such in this forfeiture action. We affirm.*
 
 
 2
 Roosevelt does not dispute the district court's finding that the government established probable cause that the property was subject to forfeiture. Under these circumstances, he bore the burden of establishing that the property was not subject to forfeiture. See United States v. 7715 Betsy Bruce Lane, 906 F.2d 110 (4th Cir.1990). This could be accomplished by showing that the property was not unlawfully used or that he did not know about or consent to the illegal use. Id. at 111.
 
 
 3
 There was no question that the property was used unlawfully. Joseph Riddick operated a major heroin ring, primarily out of the subject property, from the summer of 1988 to April 1989. In April, law enforcement officers executed a search warrant and discovered large quantities of heroin and United States currency throughout the residence. Approximately one-half pound of heroin, several firearms, and over $351,000 in United States currency were found in the attic, and Joseph and another individual were found in separate bedrooms with smaller amounts of heroin nearby. During the search, several persons came to the front door seeking heroin.
 
 
 4
 The district court disbelieved Roosevelt's claim that he was unaware of his brother's activities at the residence. During the trial, the court stated at one point that "the only thing missing from that place were the Golden Arches, there were so many people coming in and out of that house." Indeed, the evidence showed that as many as twenty customers would be lined up at Joe's door in the morning waiting to buy heroin. The evidence also showed that Roosevelt was aware that his brother Joe had a prior criminal record, including possession of heroin and cocaine, and that he had been incarcerated for his misdeeds. Under these circumstances, the district court's finding that Roosevelt was not an innocent owner is not clearly erroneous.
 
 
 5
 Furthermore, we hold that the district court properly found that Roosevelt failed to establish standing by proving an ownership interest in the subject property. The property was originally owned by Patricia Painter and her mother, Josephine King. After a relationship developed between Joseph Riddick and Ms. King, Joseph moved into the property sometime in the 1960s and eventually made substantial improvements to the house. Joseph brought suit against Painter and King in October 1983, asserting his ownership interest in the house. The suit was settled when Painter and King sold their interest, which was fixed at one-half the value of the property, to Roosevelt. Painter and King never offered to sell the property to Roosevelt. Painter testified that she was not aware of his involvement in the transaction until the time when the final papers were signed, and she noticed his name on the pertinent forms.
 
 
 6
 Roosevelt acquired the necessary funds for the transaction by borrowing over $40,000 from a bank. Between January 1988 and November 1989, Roosevelt paid almost $49,000 in principal and accumulated interest in order to pay off the mortgage. Payments were made almost exclusively in cash, which Roosevelt claimed he kept at his home.
 
 
 7
 The district court found that Roosevelt did not pay off the mortgage with his own money. Rather, the district court concluded that the funds came from Joe and the money he acquired by selling drugs. The evidence overwhelmingly supported this determination. Roosevelt could provide no credible source for the large sums of cash he possessed, and what evidence he did present was inconsistent. He told his probation officer his monthly income was $1,200. At trial, he said his income was $3,200 per month. During discovery, he claimed an annual income of $30,000. His tax records reflected $6,700 of taxable income.
 
 
 8
 At various times, he claimed to possess certificates of deposit worth from $60,000 to $90,000. In 1982, 1985, 1986, and 1987, Roosevelt testified that he bought certificates valued at $10,000 each. He allegedly paid for the certificates with cash he had at home and work, but could never identify a credible source for these funds.
 
 
 9
 The only credible evidence Roosevelt could produce to support his claim of standing was the bare legal title to the property. Bare legal title, standing alone, is insufficient to confer standing upon a claimant. See United States v. 526 Liscum Drive, 866 F.2d 213 (6th Cir.1989); United States v. A Single Family Residence, 803 F.2d 625 (11th Cir.1986). Furthermore, evidence of legal title is clearly insufficient to establish standing where, as here, the trial court concludes that the person holding title is a mere "strawman" used to disguise the source of the funds used to acquire the title. See United States v. 2511 E. Fairmont Ave., 737 F.Supp. 878 (D.Md.1990).
 
 
 10
 Finally, we note that circumstantial evidence regarding Roosevelt's treatment of the property firmly supported the district court's finding that he was not the true owner. Roosevelt never lived at the property, paid taxes on it, inspected it, invested additional funds in it, or collected rent on it. Roosevelt apparently had no connection to the property after the execution of a deed to the property in his favor. Roosevelt's brother Joseph had ample funds--almost always in cash and apparently always related to his drug activities. He could easily supply the cash to make the bank payments due on the property. The natural inference was that Joseph, who alone used the premises both as a residence and a place for the transaction of his drug dealings, and who alone made all the payments of taxes and maintenance costs, was the real owner of the property, and that Roosevelt appeared as the nominal owner only to conceal Joseph's actual ownership.
 
 
 11
 We conclude that the district court properly determined that Roosevelt failed to establish either his innocent knowledge or an ownership interest in the subject property. Accordingly, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 12
 AFFIRMED.
 
 
 
 *
 We grant the motion to submit this case on the briefs